Davis LOSADA, Appellant,

v.

The STATE of Texas, Appellee.

No. 69508.

Court of Criminal Appeals of Texas, En Banc.

Oct. 29, 1986.

Jose Luis Pena, Harlingen, for appellant.

Benjamin Euresti, Jr., Dist. Atty. and Mervyn M. Mosbacker, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction for capital murder, committing murder in the course of aggravated sexual assault. V.T. C.A. Penal Code, Section 19.03(a)(2). Punishment was assessed at death.

In his fifth ground of error, appellant argues that the evidence was insufficient to support his conviction in that there was no evidence corroborating the accomplice witness testimony.

Testimony at trial showed that the body of fifteen year old Olga Lydia Perales was found on the morning of December 24, 1984, in a brushy area near San Benito. Perales had been raped and then beaten and stabbed. A pathologist testified that the cause of death was several severe blows to the head which caused a skull fracture. In addition Perales had been stabbed two times in the chest but the pathologist testified that since there was very little internal bleeding from these wounds the victim was probably already dead when she was stabbed.

Three friends of the victim testified that they had been with the victim the night of her death. After an evening of walking around San Benito and driving around with several boys, the victim ended up at the home of Ray Amaya shortly before 10:00 p.m. Although her girl friends left, the victim remained at the home of Ray Amaya. This was the last any of Olga Lydia Perale's friends saw of her.

The State's principal witness was Rafael Levya, Jr. Levya testified that on the night of the murder he had been driving around, drinking and smoking marihuana with Joe Cardenas, Jesse Romero and appellant. They were in Joe Cardenas' car. The group eventually ended up at Ray Amaya's house. When they got to Amaya's house, they saw him coming out of a shed in his backyard. Amaya told them that he had Olga Lydia Perales in the shed and they were having sex. After talking with Amaya for a few minutes, someone said something about taking Perales home. Amaya called Olga Lydia out of the shed. She came out and spoke with Amaya and then she got into Cardenas' car. According to Levya, he was sitting in the back seat of the car along with appellant. Joe Cardenas was in the driver's seat, Jesse Romero was sitting immediately beside Cardenas and Olga Lydia was sitting next to the passenger door in the front seat. Before they started driving away Jesse Romero pushed Olga Lydia's head down between her knees and told her not to make any noise. When Olga Lydia resisted, Jesse Romero pulled out a knife, held it to her neck and told her to shut up. Cardenas drove out into the country and stopped the car. Levya testified that he, Cardenas and Romero got out of the car. Appellant remained in the back seat and ordered Olga Lydia to climb in the back seat. Olga Lydia's clothing was removed and, although Olga Lydia pleaded with the quartet to let her go, she was repeatedly raped. Initially she was raped by appellant. Then she was forced to commit oral sodomy on appellant while first Jesse Romero and then Levya had anal intercourse with her. Although Cardenas did not have intercourse with Olga Lydia, Levya testified that he saw Cardenas sticking some object inside of Olga Lydia while she was performing oral sodomy on appellant. When everyone else was finished, appellant raped Olga Lydia two more times, once in the back seat of the car and once on the top of the trunk lid. After the group had finished it was decided that they had to do something to keep Olga Lydia from going to the police. Cardenas pulled a pipe out of the car and handed it to Levya. Everyone told Levya to hit Olga Lydia with it as they had to make sure she did not tell anyone what had happened. Levya testified that he did not want to hit Olga Lydia so he asked her if she would promise not to tell anyone. She immediate-

ly did so. He told the others that she had promised not to tell anyone but they all insisted that he hit her. Levya argued with the others for several minutes while Olga Lydia pleaded that she would not tell anyone. Levya testified that suddenly his mind went blank and he took the pipe and hit Olga Lydia on the right side of the head. Immediately thereafter Jesse Romero grabbed the pipe and began striking Olga Lydia. The pathologist testified that she was probably struck 20 to 30 times about the head and the shoulders. Levya testified that when blood began squirting out of Olga Lydia's head, he turned away but he could still hear the others beating her with the pipe. After the beating stopped, appellant stabbed her once in the chest. Levya and Jesse Romero drug the body into the brush and Levya stabbed her one more time in the chest. The group then got back in Cardenas' car and left the area. During the trip back to San Benito, they threw the knives out of the car window and stopped on a bridge and threw the victim's clothing into a creek.

■ The trial judge instructed the jury as a matter of law that Rafael Levya, Jr. was an accomplice witness. Article 38.14, V.A.C.C.P., requires that before a conviction can be obtained based upon the testimony of an accomplice witness, there must be some corroborating testimony that tends to connect the defendant with the offense. To test the sufficiency of this corroborating testimony, the reviewing court must eliminate from consideration the evidence of the accomplice witness, and then examine the evidence of the other witnesses to ascertain if it is of an incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient. *Brooks v. State*, 686 S.W.2d 952 (Tex.Cr.App.1985); *Paulus v. State*, 633 S.W.2d 827 (Tex.Cr.App.1982) (on rehearing); *Walker v. State*, 615 S.W.2d 728 (Tex.Cr.App.1981); *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979); cf. *Castaneda v. State*, 682 S.W.2d 535 (Tex.Cr.App. 1984). The corroborative testimony need not directly link the accused to the crime or

be sufficient in itself to establish guilt. *Walker v. State*, supra; *Eckert v. State*, 623 S.W.2d 359 (Tex.Cr.App.1981); *Carrillo v. State*, supra.

However, a conviction cannot stand if the corroborative evidence does no more than point the finger of suspicion toward an accused. *Paulus v. State*, supra; 24 Tex. Jr.2d Evidence, Sec. 694, p. 326, note 18, and cases there cited. Thus, if the accomplice witness states a number of facts that are corroborated by evidence of other witnesses, but these corroborated facts do not tend to connect the accused with the crime, the requirements of Article 38.14, V.A.C. C.P., are not met. *Paulus v. State*, supra.

■ Eliminating Levya's testimony, we find that the testimony of several other witnesses sufficiently connects the appellant with the crime. Evidence from two witnesses placed appellant with the deceased shortly before the offense. Sandra Galvan, a friend of the victim testified that shortly before 10:00, she and Ruben Ortega drove to Ray Amaya's house where a party was in progress. There she saw the victim. Also present were appellant, Joe Cardenas, Jesse Romero, Ray Amaya and Albert Matamoras. Galvan testified that after talking with the victim a short while, she, Ruben Ortega and Albert Matamoras left. As they were driving away, she saw Joe Cardenas, Jesse Romero and appellant leaving in Joe Cardenas' car. In addition, Deputy Sheriff S.R. Garcia testified that when he initially questioned appellant and Cardenas about their contact with the victim on the night of the offense, they both told him that they had given the victim a ride from Ray Amaya's house that night and were going to take her home but when the victim requested that they drop her off at the Azteca building in San Benito, they did so.

The record also reflects that appellant made admissions to others concerning his involvement in the offense. Norma Villareal, appellant's live-in girlfriend, testified that after he had been arrested, appellant told her that Jesse Romero had raped the

victim and that Levya had stabbed the victim. Appellant also admitted to Villereal that he had made a big mistake but "those bitches deserved to die." Finally, Villareal testified that when she asked appellant why they killed the victim, appellant told her they killed the victim because she was going to tell the police and her mother what they had done. Daniel Agado, Jr., a security officer for the court, testified that the day before his testimony while he was taking appellant back to the county jail, appellant asked him what he thought about the trial. Appellant then told Agado that Levya, the accomplice witness, was telling the truth. Appellant also told Agado that he had had sexual intercourse with the victim, although it was not rape and then he had stabbed her.

Finally, scientific evidence connected appellant with the offense. Deputy Sheriff Garcia testified that he investigated the crime scene after the victim's body was discovered and took a photograph of a shoe print found near where the body was located. Raul Guajardo, a Department of Public Safety chemist, testified that he compared the photograph with a pair of work boots obtained from appellant. While Guajardo was unable to determine if the appellant's right work boot in fact made the print found at the murder scene, he testified that the appellant's right work boot had the same class characteristics as the boot that made the print. Thus the boot that made the print found at the murder scene would have to have the same heel size and be of the same style and brand as appellant's boot.

■ Appellant, relying on *Fortenberry v. State*, 579 S.W.2d 482 (Tex.Cr.App.1979) and *County v. State*, 668 S.W.2d 708 (1984), contends that the accomplice witness testimony must be corroborated as to the element which elevates murder to capital murder. Thus he contends the evidence is insufficient to connect appellant to the sexual assault of the victim. In *Fortenberry* and *County*, this Court held that in a capital murder case, where the State's case is based upon the testimony of an accom-

plice witness, the trial judge should instruct the jury that the accomplice witness' testimony had to be corroborated as to the specific element that elevated the crime of murder to capital murder. However, in the recent case of *Holladay v. State*, 709 S.W.2d 194 (Tex.Cr.App.1986), we overruled *Fortenberry* and *County* and held that Article 38.14, supra, merely requires that the corroborating evidence simply tend to connect the accused with the crime and no more. Thus there is no requirement that the non-accomplice witness testimony corroborate the accused's connection to the specific element which raises the offense from murder, to capital murder. This ground of error is overruled.

In another ground of error, appellant argues that the jury engaged in misconduct when it failed to make a diligent effort to reach a verdict on the basis of the evidence in the record and did not consider all the evidence admitted. He maintains that had the jury properly considered all the evidence, they would not have returned a verdict of guilty.

■ Article 38.04 V.A.C.C.P., provides that reconciliation of conflicts and contradictions in the evidence is within the province of the jury. Such conflicts in evidence will not call for reversal if there is enough credible testimony to support the conviction. *Bowden v. State*, 628 S.W.2d 782 (Tex.Cr.App.1982). The jury may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions. *Bowden v. State*, supra.

"... The duty is placed by statute upon the jury to pass on the weight of the testimony and the credibility of the witnesses, and this court does not feel itself called upon to interfere with and overturn the judgment of the jury in any case of conflict of facts, unless we be convinced there are not sufficient facts in the record which, if believed, would sustain the conviction. We cannot agree to such a conclusion in this case." *Maedgen v. State*, 104 S.W.2d 518, at 519 (Tex.Cr.App.1937).

Clearly under the evidence set out above, there is sufficient evidence to support the jury's verdict. We find no jury misconduct. This ground of error is overruled.

In his second ground of error, appellant argues that error occurred when one of the court security guards, Danny Agado, was allowed to testify for the State. He asserts that since Agado was the court bailiff and had intimate contact with the jurors, allowing him to testify deprived appellant of due process.

■ We note initially that error has not been preserved in that appellant voiced no objection at trial. *Esquivel v. State,* 595 S.W.2d 516 (Tex.Cr.App.1979); *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978). The record shows that during rebuttal of its case, the State called Agado to the stand:

"MR. MOSBACKER: Call Danny Agado.

"THE BAILIFF: Raise your right hand and face the judge.

. (The witness was sworn in by the bailiff.)

"MR. PENA [defense counsel]: Your Honor, was he excused from the rule? He's been here all along.

"THE COURT: Yes. He is one of the security guards for this courtroom, so he would have to be here.

"MR. MOSBACKER: Your Honor, we just subpoenaed him this morning.

"THE COURT: All right."

Thereupon the State began their direct examination of the witness without further comment from appellant. Appellant's question and statement do not qualify as an objection and we hold that error has not been preserved.

■ Even if a proper objection had been timely voiced, we would find no merit to appellant's claim. Appellant relies on *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). In *Turner,* the testimony of two sheriff's deputies who were the State's main witnesses in the case was allowed after the defense had established that they had been in charge of the jury and had been in close association with the jurors throughout the trial. In the instant case, Agado was not one of the State's main witnesses but was used on rebuttal. In addition although the record does reflect that Agado was a security guard for the court, the record does not affirmatively show as appellant would have us believe that Agado was the court bailiff and thus in immediate contact with the jury. Several times throughout the record there are references to "Danny" and "the security guard" but the record indicates that there were several security guards and we have no indication that the "Danny" referred to was the witness Agado. Additionally, there is nothing in the record to show that Agado had any courtroom duties other than to escort appellant back and forth from the county jail. Finally, the record shows that Agado was not the bailiff in that he was sworn in by the bailiff prior to his testimony. We find no error. *Euziere v. State,* 648 S.W.2d 700 (Tex.Cr.App.1983). Compare *Ex parte Halford,* 536 S.W.2d 230 (Tex.Cr.App.1976), where the defendant's conviction was reversed because the sheriff who was acting as the bailiff and had intimate contact with the jury for five days, was allowed to testify as to the defendant's sanity. Appellant's second ground of error is overruled.

In his third ground of error, appellant complains of the admission into evidence of State's Exhibit 24, an 8 x 10 photograph showing the victim's bloodied face and left arm as she appeared after the offense. Appellant argues that the picture was admitted solely to inflame the minds of the jury. Furthermore, he argues that the error was compounded during the State's closing argument when the prosecutor held up State's Exhibit 24 and argued:

"Mr. Pena stood up here for 25 minutes and all he could talk about was about people slapping people in the face. I assume he means us slapping Davis Losada in the face. He said this little girl here, Olga Lydia Perales, consented to that. He wants you to believe she consented to that."

In *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972), this Court held that even though a photograph was gruesome it would be admissible if a verbal description of the scene was admissible. In the instant case a verbal description of the scene was admissible and was in fact given by Deputy Sheriff S.R. Garcia. The mere fact that the photograph was enlarged does not render the photograph inadmissible unless the sole purpose in the enlargement was to inflame the minds of the jurors. *Banks v. State*, 643 S.W.2d 129 (Tex.Cr.App.1982). There is nothing in the record to indicate the photograph was offered solely to inflame the minds of the jurors. *Philen v. State*, 683 S.W.2d 440 (Tex.Cr.App.1984). We find that the trial court did not abuse its discretion in admitting the photograph. *Thomas v. State*, 701 S.W.2d 653 (Tex.Cr.App.1985).

As for appellant's contention concerning the prosecutor's actions during the jury argument, there is nothing in the record to support his contention that the prosecutor referred to any particular photograph at the time he made his argument. We overrule this ground of error.

In his fourth ground of error appellant asserts that his conviction was obtained through the use of perjured testimony. It is clear that the State is not allowed to obtain a conviction through the knowing use of perjured testimony. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Luck v. State*, 588 S.W.2d 371 (Tex.Cr.App.1979). If the prosecution presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that the testimony was false, then the conviction must be reversed. *Napue v. Illinois*, supra; *Luck v. State*, supra; *Means v. State*, 429 S.W.2d 490 (Tex.Cr.App.1968). However, the appellant bears the burden of showing that the testimony used by the State was in fact perjured. *Luck v. State*, supra.

Appellant initially asserts that the State conspired to hide the fact that the accomplice witness Levya was actually in custody prior to January 8, 1985.

Testimony at trial showed that prior to the accomplice witness Levya turning himself in the authorities had no firm leads in finding the people responsible for the victim's death. Several witnesses testified that on January 8, 1985, accomplice witness Levya went to the authorities and told them the story of the offense. These witnesses also testified that on January 9, Levya led the officers to the location where the victim's clothing had been thrown. This trip was videotaped by a police photographer. Later that day Jesse Romero and Joe Cardenas were arrested. At trial Javier Loredo, who at the time of the investigation was employed by the Cameron County Sheriff's office, testified that on January 9, 1985, he obtained hair samples from Joe Cardenas, one of appellant's codefendants. On cross-examination Loredo testified as follows:

"Q. So these items were taken on the 9th and were turned over to Mr. Garcia immediately?

"A. Yes.

"Q. Were you at the scene of the crime at any time during the investigation?

"A. No. Days later. But there was no evidence. We just went and took some photographs.

"Q. So there were some photographs taken after several days?

"A. Yes.

"Q. Who took these photographs?

"A. R.D. Moore from Harlingen P.D.

.    .    .    .    .

"Q. But these photographs were taken say two or three days after the incident?

"A. They had to have been, sir.

"Q. About three days?

"A. I have no idea exactly how long.

"Q. Just several days?

"A. Several days; that's right."

Appellant asserts that this testimony somehow shows that the other witnesses committed perjury when they said that accomplice witness Levya turned himself in on January 8.

We disagree. Clearly Loredo was not certain about the dates involved. However, confusion as to dates does not in and of itself show perjury. Furthermore, it is possible that the trip to the crime scene which Loredo testified about was not the same trip other witnesses described as occurring on January 9. We are compelled to hold as we did in *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983), that there is nothing in the record to show that any of the witnesses gave false testimony regarding the date that Levya turned himself into the authorities. Nor does the record show that the State knew of and conspired to present any alleged perjury. *Hawkins v. State*, supra. Discrepancies in testimony alone do not make out a case of perjury.

Appellant also alleges that perjury is shown in that accomplice witness Levya initially gave the authorities a version of the facts different from the version he related at trial. He asserts that Levya's first story was indeed the true version of the murder but yet the State failed to present that version as the true set of facts. The record shows that upon direct examination, Levya admitted to initially telling the police that he was not awake during the drive to the scene of the offense but when he awoke he participated in the rape of the victim. He also told the police that he did not have anything to do with the murder of the victim. When questioned by the prosecutor about the discrepancies in the stories, Levya admitted that when he turned himself in he was scared and wanted to tell the story in the best light in order to protect himself.

Once again there is nothing in the record to show that Levya's testimony at trial was false. Nor does the record indicate that the State knew of and conspired to commit perjury. *Hawkins v. State*, supra. Rather the record indicates that the State presented evidence to show that Levya had changed his story. We find that appellant has failed to sustain his burden of proof as to his allegations of perjury. Ground of error number four is overruled.

In a multifarious ground of error appellant complains of two instances of jury argument made by the prosecutor during the guilt-innocence phase of the trial. Appellant contends that the prosecutor was arguing to the jury concerning facts not in evidence and therefore reversal is mandated. Although this is a multifarious ground of error and we are not mandated to address it, we will consider it in the interest of justice.

In the first instance the prosecutor made the following argument:

"... Dr. Flory testified that there was sperm found in her vagina. *That's clearly an indication of sexual assault.* He said that there were no bruises or lacerations on her vagina, but if she was being threatened with a weapon, there would be no reason for there to be bruises or lacerations on her vagina. She cooperated under threat of death and you will remember who had that weapon on her to begin with.

"*Another indication that she was sexually assaulted is the fact that she's dead. If she was not sexually assaulted, if it was consented to, like maybe Mr. Pena will have you believe and he might get up here and argue that to you, if it was a consent, they wouldn't have killed her. There would have been no reason to kill her. They killed her because she did not consent and they did not trust her to not say anything.* They talked about it. That's another indication it was an aggravated sexual assault."

We note initially that no objection was made to the argument and error, if any, has not been preserved. Thus unless the argument of the prosecutor is so prejudicial that no instruction could cure the harm, the failure timely to object waives any error. *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984); *Plunkett v. State*, 580 S.W.2d 815 (Tex.Cr.App.1979) (Opinion on Rehearing). Even if an objection had been made, we find that the argument is both a summation of the evidence and a reasonable deduction from the evidence. Dr. Flo-

ry testified that sperm was found in the victim's vagina. Levya testified that the victim was sexually assaulted numerous times. He also testified that she was killed in order to prevent her from going to the authorities and reporting the sexual assault. There is no error.

The second instance appellant complains about occurred when the prosecutor argued the following:

"... It's also corroborated by the admissions that Davis Losada made ... about how they raped her and how she was beaten to death, killed, and stabbed, ... Mr. Agado came in here and testified to you that yesterday after the testimony he said that Rafael Leyva told the truth, 'I stabbed her.'"

■ Once again error if any was not preserved in that no objection was voiced concerning this argument. *Green v. State,* supra; *Plunkett v. State,* supra. However, even if an objection had been made, we would find no error in that this portion of the argument was merely a summation of the evidence. Evidence showed that the victim had been brutally beaten and stabbed. During trial, appellant's girlfriend testified that appellant had told her that Jesse Romero had raped the victim and that Rafael Levya had stabbed the victim. In addition Daniel Agado, Jr., one of the security officers for the court testified that as he was escorting appellant to the county jail after one of the days of trial testimony, appellant told him that the accomplice witness Levya was telling the truth—that appellant had in fact stabbed the victim. Clearly the prosecutor was properly summing up the evidence. We find no error. Appellant's fifth ground of error is overruled.

In another multifarious ground of error, appellant argues that the prosecutor committed reversible error during his jury argument at the close of the guilt-innocence stage of the trial when he twice commented on the appellant's failure to testify.

We note that appellant failed to voice an objection to either of the comments. Unless the arguments of the prosecutor are so prejudicial that no instruction could cure the harm, the failure to timely object waives any error. *Green v. State,* supra; *Plunkett v. State,* supra.

■ A prosecutor's comment on a defendant's failure to testify offends both our State and Federal Constitutions. *Nickens v. State,* 604 S.W.2d 101 (Tex.Cr.App. 1980). For a statement to constitute a comment on the failure to testify, the language of such a statement must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Griffin v. State,* 554 S.W.2d 688 (Tex.Cr.App.1977). For an indirect comment to constitute reversible error, it must call for a denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Short v. State,* 671 S.W.2d 888 (Tex.Cr. App.1984); *Johnson v. State,* 611 S.W.2d 649 (Tex.Cr.App.1981).

The prosecutor first argued as follows:

"... What do we know about Davis Losada? From his own words we know he was there. He told Norma he was there. *He didn't contest that.* Mr. Pena [defense counsel] says he was there ..." (material in brackets added)

Appellant asserts that this statement is an indirect comment on his failure to testify and calls for an assertion of fact or contradictory evidence which only appellant is in a position to offer.

■ The record shows that appellant's live-in girlfriend, Norma Villereal, testified that while in jail appellant told her he was present during the commission of the offense. The prosecutor reminded the jury that appellant never denied making this statement to Norma Villereal. We agree that this was probably an indirect comment on appellant's failure to testify, calling for contradictory evidence which only appellant is in a position to offer. *Pollard v. State,* 552 S.W.2d 475 (Tex.Cr.App.1977); *Dubose v. State,* 531 S.W.2d 330 (Tex.Cr.App.1975). However, because there was no objection, reversal is not mandated unless appellant

shows such prejudice that an instruction could not have cured the error. *Green v. State*, supra.

■ Examining the record we see that the defensive theory was not that appellant was not present when the offense occurred, but rather that everyone had consensual intercourse with the victim and then for some unknown reason, Rafael Levya, the accomplice witness, killed her. It was the defense's contention that although appellant was present at the scene of the offense, he had nothing to do with the killing of the victim. Because the defensive theory of the case was based on the fact that appellant was present when the killing occurred, we find that the prosecutor's comment was not so prejudicial that an instruction could not have cured the error. Therefore, we find that appellant's failure to object waived the error.

The second alleged improper argument occurred when the prosecutor argued the following:

"Rafael Leyva's testimony is corroborated in this case by the physical evidence, the shoe prints, the pubic hair, all the blood analyses. By all of this physical evidence it's corroborated. It's also corroborated by the admissions that Davis Losada made, first, to Norma Villarreal about how they raped her and how she was beaten to death, killed, and stabbed, and then how he—*He didn't tell Norma this.* I guess he didn't want to tell his girl friend (sic) what he did. But he sure told Danny Agado."

Clearly the underlined portion of the argument was not a comment on the defendant's failure to testify. The record shows that the testimony the prosecutor was attributing to Norma Villareal actually came from Danny Agado. When the prosecutor discovered his error, he corrected it by making the underlined statement. This in no way can be construed as a comment on appellant's failure to testify. Appellant's sixth ground of error is overruled.

In his last ground of error, appellant argues that under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the death penalty is prohibited in his case. At trial, Dr. Flory, the pathologist, testified that the cause of the victim's death was the severe blows to the head inflicted with a blunt object. He further testified that the victim was probably dead when the two stab wounds were inflicted. The crux of appellant's argument is that since there is no testimony that appellant inflicted one of the blows with the blunt instrument, the death penalty is prohibited under the Supreme Court's opinion in *Enmund*.

Appellant is mistaken in his application of *Enmund*. *Enmund* does not limit itself to the requirement that before the death penalty is imposed it must be shown that the accused himself killed the victim. Rather *Enmund* stands for the proposition that:

"imposition of the death penalty is additionally not prohibited where the appellant anticipates and contemplates that life will be taken or that lethal force will be employed." *Kelly v. State*, 669 S.W.2d 720, at 724 (Tex.Cr.App.1984).

See also *Santana v. State*, 714 S.W.2d 1 (Tex.Cr.App.1986); *Selvage v. State*, 680 S.W.2d 17 (Tex.Cr.App.1984); *Meanes v. State*, 668 S.W.2d 366 (Tex.Cr.App.1983).

■ The evidence in the instant case clearly shows that appellant had the specific intent to kill and contemplated that life would be taken. The evidence shows that appellant told accomplice witness Levya to hit the victim with the pipe in order to shut her up so that she would not go to the authorities and report the sexual assault. After the group had finished beating the victim, and one of the group thought they saw her move, appellant told the others that they had to stab her to make sure she was dead. After making this remark, appellant stabbed the victim. Appellant's intent to kill as well as his awareness that the victim's life would be taken has been clearly shown. We overrule this ground of error.

The judgment is affirmed.

CLINTON and TEAGUE, JJ., concur in the result.