Ruben Luis SANCHEZ, a/k/a Ruben Sanchez, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–87–152–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 15, 1988.

Rehearing Denied Jan. 12, 1989.

Barry R. Benton, Brownsville, for appellant.

Ben Euresti, Jr., Dist. Atty., Brownsville, for appellee.

Before BENAVIDES, UTTER and SEERDEN, JJ.

OPINION

BENAVIDES, Justice.

This is an appeal from a conviction of arson. The trial was before a jury. After appellant pled true to two enhancement counts, the trial court assessed punishment at fifty years in the Texas Department of Corrections. Appellant presents four points of error for review.

By his first point of error, appellant asserts that the trial court erred in failing to instruct a verdict since the evidence was

insufficient to corroborate the testimony of the accomplice witness. Because the appellant challenges the sufficiency of the corroborating evidence, a review of the facts is necessary to determine whether there was sufficient evidence presented to sustain the conviction.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on September 21, 1986, at approximately 9:30 p.m., a fire was reported at the Toddle Inn Restaurant located in Brownsville, Texas. The restaurant was owned and operated by Alex Perez, the local sheriff. The accomplice, Andres Alejandros Gonzales, testified that around 7:30 p.m. on September 21, he was at appellant's house drinking beer. Andres testified that they had consumed approximately three six-packs of beer when appellant's niece, Juanita Sanchez, informed appellant that her baby was ill and asked appellant to take them to the hospital. Appellant, accompanied by the accomplice, drove Juanita, Juanita's two children, and Virginia Sanchez to the hospital.

Andres further testified that when they arrived at the hospital, Juanita, her children, and Virginia got out of the car and went into the emergency room. According to Andres, he and appellant then drove to the K and M Short Stop Convenience Store to purchase gasoline. Andres testified that appellant went inside the store and purchased approximately three dollars worth of gasoline, while he pumped the gasoline. In compliance with appellant's instructions, Andres put fifty cents worth of gasoline in a gallon plastic container and the rest in the car. Immediately thereafter, appellant drove to the restaurant and offered Andres "twenty or twenty-five dollars" to burn it down. Andres testified that he accepted appellant's offer.

When they arrived at the restaurant, Andres got out of the car and ran to the back of the building. Appellant remained in the car, while Andres poured gasoline on the ground floor outside of the restaurant and lit the gasoline with "Classic" Mexican matches. After Andres set fire to the restaurant, they went to appellant's house.

Sometime thereafter, Juanita called appellant from the hospital and requested a ride home. According to Andres, they went to the hospital and then to a pharmacy to get medication for the baby. After purchasing the medication, appellant drove everyone back to his house. Appellant and Andres then walked down an alley to a friend's party. Andres testified that they met appellant's wife and step-daughter, and Sylvia Ranjel at the party. According to Andres, they all decided to get more beer, so appellant drove his wife's station wagon to a convenience store. After they bought the beer, appellant drove past the restaurant and, shortly thereafter, he and appellant were arrested.

Andres further testified that while he was in jail, a jail "trustee" had given him a letter which was written in Spanish. The letter was introduced into evidence and read into the record by an interpreter. According to Andres, the trustee told him that an inmate, Rafael Casas, had written the letter. In the letter, it was written that the appellant was upset that he was being blamed for the fire and requested Andres accept full responsibility for the fire.

To corroborate Andres' testimony, the State called Abel Zapata, the local fire marshall, to testify. Zapata testified that on the night in question, he responded to the call and investigated the fire. When he arrived at the scene, Zapata found a one-gallon plastic container which smelled like gasoline. After he conducted numerous tests, Zapata determined that the fire was intentionally set by the use of a flammable material which was ignited by a match.

Alex Perez, the County Sheriff, testified that on September 21, he was called by the dispatcher and told his restaurant was on fire. Perez immediately drove to the restaurant where he found a plastic milk container and a burned Mexican match. In order to establish appellant's motive, Perez testified that appellant had a grudge against him. According to Perez, appellant was in jail when he was a Justice of the Peace, and he had denied appellant's re-

quest to attend his brother's funeral.[1]

Sergio Leal, an employee of the K and M Short Stop, testified at trial on behalf of the State. He testified that on September 21, at approximately 5:30 p.m., appellant came into the store and purchased a small amount of gas. Leal testified that appellant was with "another person," but this person did not come into the store. Leal recognized appellant because he had shopped there several times before; however, Leal did not identify the "other person" as the accomplice. Leal did not see who pumped the gas, and did not see appellant or the other person pump gas into a milk container.

At the trial, appellant testified on his own behalf. Appellant admitted being with the accomplice on the night of the offense. However, appellant testified that when they arrived at the hospital, he parked in the emergency parking area. According to appellant, he, Andres, Virginia, and Juanita's other child remained in the car while Juanita and her sick child went into the emergency room. After waiting approximately ten minutes, Andres told appellant he wanted to go to a bar near the hospital, and he left the hospital on foot. According to the appellant, he did not see the accomplice until later that night, after the commission of the offense.

Appellant testified that at approximately 9:30 p.m., Juanita returned to the car with the baby and asked him for a ride to a pharmacy. Before going to the pharmacy, however, appellant drove to the K and M Short Stop to purchase some gasoline. Both Juanita and Virginia Sanchez testified at trial and corroborated appellant's testimony.

Appellant further testified that after he drove home, he went to a friend's party where he saw Andres and Sylvia Ranjel. According to appellant, they both asked for a ride home.[2] Appellant's wife and step-daughter were also at the party and needed a ride home; therefore, appellant left the party with Andres, Sylvia, his wife, and step-daughter. According to appellant, instead of going home, they decided to buy some beer and "cruise around." Appellant testified that he drove by the restaurant, made an illegal u-turn, and was subsequently arrested for driving while intoxicated.

■ On appeal, appellant asserts that the above evidence was insufficient to sustain his conviction. We agree. It is well-established that no one may be convicted on the basis of accomplice testimony without other evidence which corroborates the accomplice testimony *and tends to connect the defendant with the commission of the charged offense.* Tex.Code Crim.Pro.Ann. art. 38.14 (Vernon 1979) (emphasis ours).

■ The test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses to ascertain if there is evidence of incriminating character which tends to connect the accused with the commission of the offense. *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App. 1988); *Gamez v. State,* 737 S.W.2d 315, 323 n. 10 (Tex.Crim.App.1987). If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Reed,* 744 S.W.2d at 125.

■ A reviewing court should consider all the facts and circumstances in evidence to furnish the necessary corroboration, which may be circumstantial or direct. *Id.* at 126. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.* The Court of Criminal Appeals

---

1. To controvert this motive testimony, appellant introduced evidence showing that he did in fact attend his brother's funeral and that Andres had his own motive. Upon cross-examination, Andres admitted that a week before the arson was committed, the sheriff's department had raided a house where he had been working.

2. Several friends and relatives of the appellant, who were at the party, testified Andres arrived at the party at approximately 9:45 and was telling everyone that he had just burned the sheriff's restaurant. These witnesses also testified that Andres had told them that he had "got revenge" for the raid that had occurred earlier that week.

recently overruled a number of cases which held that evidence which merely makes the accomplice's testimony "more likely than not" is sufficient corroboration. *See Reed,* 744 S.W.2d at 125. Therefore, a conviction cannot stand if the corroborative evidence does no more than point a finger of suspicion towards an accused. *Losada v. State,* 721 S.W.2d 305, 308 (Tex.Crim.App.1986).

■ If the accomplice witness states a number of facts that are corroborated by evidence of other witnesses, but these corroborated facts do not tend to connect the accused with the crime, the requirements of Article 38.14 are not met. *See Losada,* 721 S.W.2d at 308. We will, therefore, exclude the accomplice testimony and consider only the evidence provided by the other witnesses.

First, the nonaccomplice evidence shows the commission of an arson at approximately 9:30 p.m. Several witnesses, including appellant, testified that appellant was with the accomplice approximately an hour before the commission of the offense and approximately an hour after the commission of the offense.

Article 38.14 expressly provides that the commission of an offense alone is not sufficient evidence to corroborate an accomplice witness. *Reed,* 744 S.W.2d at 126. Likewise, the mere presence of the accused in the company of the accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration. *Etheredge v. State,* 542 S.W.2d 148, 152 (Tex. Crim.App.1976).

Second, the State's evidence shows that appellant, accompanied by an unidentified person, purchased a small amount of gas approximately four hours before the commission of the offense. However, this evidence does not furnish the necessary corroboration.

Third, there was evidence that a plastic milk container and a Mexican match were found at the scene. However, there was no evidence that connected the container to the appellant. While this evidence tends to corroborate a number of facts stated by the accomplice, it does not tend to connect appellant with the crime. *See Losada,* 721 S.W.2d at 308.

Fourth, the nonaccomplice evidence establishes that an hour after the commission of the offense, appellant was arrested near the restaurant with the accomplice. Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime. *Reed,* 744 S.W. 2d at 127. In the instant case, appellant's testimony that he intended to drive everyone home, but then decided to "cruise around" and drink beer is suspicious. However, the fact that appellant drove past the restaurant *an hour* after the commission of an arson is too attenuated to connect him with that arson.

Fifth, there was evidence that appellant held a grudge against the sheriff because he had previously denied appellant permission to attend his brother's funeral. Evidence which merely goes to show motive or opportunity of the accused to commit the crime is insufficient alone to corroborate, but it may be considered in connection with other evidence tending to connect the accused with the crime. *Id.*

While we acknowledge that all of the nonaccomplice testimony, taken together, casts a shadow of suspicion on the accused, such evidence falls short of tending to connect appellant with the crime. *Compare Cockrum v. State,* 758 S.W.2d 577 (Tex. Crim.App.1988) *with Meyers v. State,* 626 S.W.2d 778 (Tex.Crim.App.1982).

We, therefore, sustain appellant's first point of error. Since the first point is dispositive, we need not address appellant's remaining points of error.

Accordingly, we reverse the judgment of the trial court and remand for an entry of acquittal.