Velasquez v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00477-CR






Arthur Velasquez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 44,866, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







PER CURIAM


 A jury convicted appellant of attempted capital murder, aggravated robbery, and
sexual assault. Tex. Pen. Code Ann. §§ 15.01, 19.03, 22.011(a), & 29.03 (West 1994). The
trial court assessed punishment for each conviction at life imprisonment. In his only point of
error, appellant attacks the legal sufficiency of the evidence to establish his identity as perpetrator
of the offenses. We will affirm the judgment of the trial court.

 The offenses occurred in the early morning of October 27, 1994, at a convenience
store in Temple called the Exxon E-Z Way. On that date the complainant, Patricia Lynn Fondren,
was working the night shift alone. About 2:30 in the morning, she saw a man walking quickly
toward the store with his head down and his hands appearing to hold something that she could not
see. Fondren described the man as Hispanic, 5'4" or 5'5" tall, weighing 150 to 160 pounds, and
having shoulder-length black hair. He was wearing a black and white checkered outer shirt with
a white T-shirt underneath. The man entered the store and ran toward Fondren, yelling at her to
give him all the money. As he walked behind the counter to the register where Fondren stood,
the man held up a knife. He was standing, when he displayed it, "real close" to Fondren. The
man removed sixty-seven dollars from the cash register, put it in a paper bag, and demanded that
Fondren open the safe beneath the counter. When Fondren could not, the man became angry and
grabbed her sweater, ripping it. He told her to go into the back office.

 Once in the office, the man ordered Fondren to sit in a chair and disrobe. 
Photographs of the office admitted in evidence show it to be a small, cluttered room with two
chairs placed several feet apart from each other, a desk, safe, and store supplies. The man stood
in front of Fondren and held the knife even with her face, yelling that he would kill her. Fondren
wrested the knife from one of his hands and ran from the office, but the man caught her by her
hair, hit her in the face, and knocked her down. Fondren felt two thumps in her back, which
were shown to be puncture wounds, and the assailant dragged her back to the office by her hair.

 The man told Fondren to sit in one of the chairs, and he again held the knife in her
face. He ordered Fondren to spread her legs, then held the knife near her vagina and penetrated
her with his fingers for ten minutes. During this time, the assailant kissed her, bit her left breast,
and bit the side of her neck just below the ear. Fondren stated that, while he was assaulting her
in this manner, she was very close to his face. Although she could not look at him the entire
time, she observed that the assailant had yellow teeth and a dark complexion. When Fondren told
the assailant that the man who worked with her would return to the store shortly, the man ceased
assaulting her and put the bag of money in his pants.

 As the assailant lifted his shirt to place the money beneath, Fondren noticed part
of a tattoo on the left side of his abdomen. She described the part she saw as being similar to a
face, but shaped like a keyhole, and having the top shaded blue. 

 The man next pulled the phone from the wall and wrapped the cord around
Fondren's hand and waist. Once he left the store, Fondren freed herself and called the police. 
She estimated that the assailant stayed in the store thirty minutes in all. When the officers arrived,
Fondren described her assailant to them just as she did in court.

 Fondren identified appellant in court as the man who stole the money and assaulted
her. During these acts, appellant was at most two feet from her. She testified that she did not
think she would forget the attacker's face and that she was one hundred percent positive that
appellant committed the acts she had described. 

 Fondren also identified in court the shirt that the attacker wore. She particularly
remembered a hole in the shirt through which she had noticed his white T-shirt. Although
Fondren had earlier described the assailant's shirt as black and white, she agreed that the
predominant color of the shirt she identified in court was blue. Temple police officer Jeffery
Clark identified the same shirt as the one he took from appellant on the night of October 27, 1994,
shortly after appellant was arrested for aggravated robbery.

 Appellant displayed for the jury two tattooed faces on each side of his abdomen. 
Fondren recognized the top part of one of the tattoos, which was colored blue. Because of the
way the assailant had pulled up his shirt to hide the money, she had seen only one side of his
abdomen. She did not see any other tattoo on the attacker.

 Fondren also testified that the police showed her a photographic line-up of six
Hispanic males. She needed only two seconds to choose appellant's picture from the six. 
Fondren stated that she never identified anyone except appellant as the perpetrator.

 Temple police officer Sean Childress testified that on October 27, 1994, he was
patrolling an apartment complex two miles from the E-Z Way Store. At 12:20 a.m., he
encountered appellant at the complex and asked him for identification. Appellant produced a
social security card in the name of Arthur Velasquez. Childress noticed tattoos on appellant's
neck and right arm and observed that appellant's teeth were dirty, as if they had not been brushed
for some time.

 Officer Childress recalled that appellant was wearing a blue, white, and gray
checkered flannel shirt with a T-shirt underneath. When shown the shirt that Fondren had
previously identified as worn by her assailant, Officer Childress stated that it was the same shirt
appellant was wearing on October 27. Officer Childress did not see appellant return to the
apartments before he left at 2:00 a.m.

 Laura Jaramillo, who described herself as appellant's girlfriend, stated that
appellant came to her house at 1:30 in the morning on October 27, 1994. Jaramillo accompanied
appellant to another apartment, arriving at 1:45 a.m. She testified that appellant's friend Monica
came to that apartment later to visit, but that appellant remained inside from 1:45 to 7:00 a.m. 
Jaramillo identified the plaid shirt admitted in evidence as the one appellant was wearing when
he was arrested the night of October 27. 


 Monica Pippins, a friend of appellant, stated that she returned from a fishing trip
early in the morning of October 27, 1994. Between 12:30 and 1:30 a.m., she went to the
apartment where appellant was staying to ask if he wanted to play dominoes. Pippins said that
she did not see appellant, but spoke to him through the apartment door; behind the door, she could
hear appellant and Jaramillo talking. Pippins described the tattoos appellant bore on his face,
neck, arms, and stomach. She denied that any tattoo on appellant resembled a keyhole. Pippins
recognized the shirt the State had offered in evidence as belonging to appellant and stated that
appellant was wearing this shirt the evening before the events in question occurred.

 In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to
the verdict, any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614
S.W.2d 155, 159 (Tex. Crim. App. 1981). Our review of all the evidence in this case reveals an
ample basis on which a rational jury could find that the perpetrator of the offenses was appellant. 
Fondren testified that the robbery and assault lasted thirty minutes, during which she observed
appellant at close proximity under normal indoor lighting. She identified appellant both in and
out of court and recalled numerous details of appellant's appearance and dress. That other
evidence differed from Fondren's testimony does not affect the sufficiency of the evidence that,
if believed, would sustain the conviction. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim.
App. 1986). We therefore overrule point one.


 We affirm the judgment of conviction.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: June 26, 1996

Do Not Publish



ing these acts, appellant was at most two feet from her. She testified that she did not
think she would forget the attacker's face and that she was one hundred percent positive that
appellant committed the acts she had described. 

 Fondren also identified in court the shirt that the attacker wore. She particularly
remembered a hole in the shirt through which she had noticed his white T-shirt. Although
Fondren had earlier described the assailant's shirt as black and white, she agreed that the
predominant color of the shirt she identified in court was blue. Temple police officer Jeffery
Clark identified the same shirt as the one he took from appellant on the night of October 27, 1994,
shortly after appellant was arrested for aggravated robbery.

 Appellant displayed for the jury two tattooed faces on each side of his abdomen. 
Fondren recognized the top part of one of the tattoos, which was colored blue. Because of the
way the assailant had pulled up his shirt to hide the money, she had seen only one side of his
abdomen. She did not see any other tattoo on the attacker.

 Fondren also testified that the police showed her a photographic line-up of six
Hispanic males. She needed only two seconds to choose appellant's picture from the six. 
Fondren stated that she never identified anyone except appellant as the perpetrator.

 Temple police officer Sean Childress testified that on October 27, 1994, he was
patrolling an apartment complex two miles from the E-Z Way Store. At 12:20 a.m., he
encountered appellant at the complex and asked him for identification. Appellant produced a
social security card in the name of Arthur Velasquez. Childress noticed tattoos on appellant's
neck and right arm and observed that appellant's teeth were dirty, as if they had not been brushed
for some time.

 Officer Childress recalled that appellant was wearing a blue, white, and gray
checkered flannel shirt with a T-shirt underneath. When shown the shirt that Fondren had
previously identified as worn by her assailant, Officer Childress stated that it was the same shirt
appellant was wearing on October 27. Officer Childress did not see appellant return to the
apartments before he left at 2:00 a.m.

 Laura Jaramillo, who described herself as appellant's girlfriend, stated that
appellant came to her house at 1:30 in the morning on October 27, 1994. Jaramillo accompanied
appellant to another apartment, arriving at 1:45 a.m. She testified that appellant's friend Monica
came to that apartment later to visit, but that appellant remained inside from 1:45 to 7:00 a.m. 
Jaramillo identified the plaid shirt admitted in evidence as the one appellant was wearing when
he was arrested the night of October 27. 


 Monica Pippins, a friend of appellant, stated that she returned from a fishing trip
early in the morning of October 27, 1994. Between 12:30 and 1:30 a.m., she went to the
apartment where appellant was staying to ask if he wanted to play dominoes. Pippins said that
she did not see appellant, but spoke to him through the apartment door; behind the door, she could
hear appellant and Jaramillo talking. Pippins described the tattoos appellant bore on his face,
neck, arms, and stomach. She denied that any tattoo on appellant resembled a keyhole. Pippins
recognized the shirt the State had offered in evidence as belonging to appellant and stated that
appellant was wearing this shirt the evening before the events in question occurred.

 In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to
the verdict, any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614
S.W.2d 155, 159 (Tex. Crim. App. 1981). Our review of all the evidence in this case reveals an
ample basis on which a rational jury could find that the perpetrator of the offenses was appellant. 
Fondren testified that the robbery and assault lasted thirty minutes, during which she observed
appellant at close proximity under normal indoor lighting. She identified appellant both in and
out of court and recalled numerous details of appellant's appearance and dress. That other
evidence differed from Fondren's testimony does not affect the sufficiency of the evidence that,
if believed, would sustain the conviction. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim.
App. 1986). We therefore overrule point o