MARY'S OPINION HEADING 









                                                NO.
12-05-00023-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER,
TEXAS

JAMES STOUT,        §                      APPEAL
FROM THE 241ST

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                           
                                                

MEMORANDUM
OPINION

            A jury found Appellant James Stout guilty of the first
degree felony of aggravated assault on a person in retaliation for that person’s
service as an informant.  The trial court
assessed his punishment at thirty years of imprisonment.  In two issues, Appellant challenges the legal
and factual sufficiency of the evidence supporting his conviction.  We affirm.

 

Background

            Gary Halligan was a paid informer who worked with Smith
County Narcotics Detective Steve Henry. 
Halligan gave information to Henry and also to other law enforcement
agencies that led to arrests and prosecutions in twelve to fifteen drug cases.








            On April 13, 2004, Halligan called Henry very upset and
scared.  Henry told him to call the Tyler
Police Department to report what happened because Tyler P.D. was much closer
and could respond quicker.  Halligan
complied, and Officer Chris Turner was the first responder to the call.  He found Halligan nervous and
frightened.  Halligan told him that
around 10:20 p.m., while he was sitting on the sofa in his living room, a man
he knew only as Tony came into his house, walked over to him, stuck a gun to
his head, and threatened to kill him. 
Halligan told him that Tony (Appellant) was mad at him because of his
work as a police informant.

            Sergeant Jason Bean, night shift patrol supervisor for
Tyler P.D., also went to the scene and interrogated Halligan.  Halligan told him that while he was watching
television, a man he had seen only once and knew as Tony came into his house,
put a Glock pistol to his head, and said he was going to kill Halligan for what
he did.  Halligan also told Sergeant Bean
that Tony said he would be back later. 
Later that morning, Tyler P.D. received another call from Halligan saying
someone was trying to break into his house. 
When the police arrived between 4:30 and 5:00 a.m., they found three
people and their two vehicles at or near Halligan’s house.  They arrested all three persons, two for
other felony violations and Appellant for the assault on Halligan.  As Appellant was being taken to a police car,
Halligan identified him as the man he had only known as Tony.  Those arrested and the two vehicles were
searched, but no weapons were found. 
Appellant was subsequently indicted for 
aggravated assault committed against Halligan in retaliation for his
service as an informant.  See Tex. Pen. Code Ann. § 22.02(b)(2)(C)
(Vernon Supp. 2005).[1] 

            In his testimony, Halligan told the jury that Appellant
entered his house without warning, put a gun in Halligan’s mouth, and said “I
will _____ kill you for what you did to me.” 
Halligan said that Appellant apparently believed Halligan “had set him
up on a drug deal.”  Halligan testified
that he begged Appellant for his life. 
Appellant left, but promised to return later.

            Halligan testified that the one time he had seen
Appellant, Appellant came to his house with Eloy Guerrero.  While Halligan and Guerrero planned a drug
deal which never materialized, Appellant stayed on the telephone trying,
Halligan believed, to arrange other drug transactions.  He said that he relayed this information to
Deputy Henry, although Deputy Henry had previously testified that Appellant’s
name did not appear in his files before the alleged assault.

            Halligan denied ever making a case against
Appellant.  When asked by the prosecutor
if Appellant had threatened to kill him because he was an informer, Halligan
answered, “I don’t think he knew that at the time.”  Later, on redirect examination, he explained
that although he did not know if Appellant actually knew he was a confidential
informant, he believed that Appellant thought he was.

            Although the drug dealer Guerrero was arrested coming
from Halligan’s house only two weeks before the assault, both Deputy Henry and
Halligan testified that Halligan never attempted to make a case against
Appellant.

 

Standard of Review

            The standard for reviewing a legal sufficiency challenge
is whether, viewing the evidence in the light most favorable to the jury’s
verdict, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L. Ed.
2d 560 (1979); see also Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993).  In the
relatively recent case of Zuniga v. State, 144 S.W.3d 477 (Tex.
Crim. App. 2004), the court of criminal appeals explained the factual
sufficiency standard.

 

There
is only one question to be answered in a factual-sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt?  However, there are two ways in which the
evidence may be insufficient.  First,
when considered by itself, evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Second, there may be both evidence supporting
the verdict and contrary to the verdict. 
Weighing all evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so [that] the guilty verdict should not stand.  This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient to
prove the elements of the crime beyond a reasonable doubt.  Stated another way, evidence supporting guilt
can “outweigh” the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard.

 

 

Id. at
484-85.

            The elements of the offense of aggravated assault on a
public servant as presented in Appellant’s indictment are as follows:

 

(1)           a
person

                (2)           intentionally and knowingly

                (3)           threatens imminent bodily injury

                (4)           upon a person

                (5)           by threatening to kill the person by

                (6)           shooting him with a deadly weapon, a
handgun

                (7)           in retaliation for the threatened
person’s service as an informant or person who reported a crime.

 

See Tex. Pen. Code Ann. § 22.02(b)(2)(C). 

 

Discussion

            In his first issue, Appellant contends that there is no
evidence the assault alleged was in retaliation for Halligan’s service as an
informant, an essential element of the crime. 
Appellant points out that both Halligan and his handler, Deputy Henry,
stated that they had not tried to make a case against Appellant.  At one point in his testimony, Halligan told
the jury that he did not think Appellant knew he was an informant at the time
Appellant threatened to kill him.  Since
Halligan never informed against Appellant, Appellant argues that an acquittal
is appropriate because there is no evidence of an element of the offense
charged.  We disagree.  

            It is undisputed that Halligan was a police
informant.  Halligan had previously seen
Appellant only once when he came to Halligan’s house with the drug dealer Eloy
Guerrero.  The evidence shows that
Halligan played an important role in the arrest of Appellant’s companion,
Guerrero.  Two weeks after Guerrero’s
arrest coming from Halligan’s house, Appellant invaded Halligan’s house, put a
gun to his head, and threatened, “I will ____ kill you for what you did.”  Shortly after Appellant’s arrest on the
morning of April 13, while his encounter with Appellant was still fresh in his
mind, Halligan signed a statement wherein he stated that he thought Appellant
came to his house because Appellant thought he “got him busted by the DEA.”  Although Halligan initially stated that he
did not think Appellant knew he was an informant at the time he made the
threat, Halligan later explained that although he was not sure that Appellant
actually knew he was an informer, he believed Appellant thought he was.  The evidence is legally sufficient.  Appellant’s first issue is overruled.

            In his second issue, Appellant contends that the evidence
that the assault was in retaliation for Halligan’s service as a police
informant is factually insufficient.  He
argues that neither Appellant nor his two companions had a gun when
arrested.  Appellant argues it is
unreasonable to believe that he would return unarmed to renew or make good his
earlier threat to kill that he had made with a Glock automatic pistol.

            Appellant also attacks the testimony of the prosecution’s
main witness, Halligan, as being so inconsistent and contradictory that it does
nothing to support the verdict.  He
points to Halligan’s testimony at one point that Appellant put the pistol in
his mouth.  On another occasion, Halligan
said Appellant put the gun to the side of his head.  On another occasion, he testified that he
refreshed his memory by reading his statement. 
He later admitted that he could not read at all.  Appellant maintains that Halligan offered no
satisfactory explanation why, if he was really scared, he waited over an hour
and perhaps two hours before he called the police to report the assault.  Halligan told the officers that Appellant sat
on the couch and pointed the pistol at him. 
In his trial testimony, he said Appellant never sat on the couch with
him.

            It must be conceded that Halligan’s testimony is
sometimes inconsistent with his statements made immediately after the offense
eight months earlier.  It is, however,
the province of the jury to determine the credibility of the witnesses and the
weight to be given their testimony and to resolve conflicts and inconsistencies
in the evidence.  See, e.g., Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Measured against the appropriate standard of
review, we conclude the evidence recited in our discussion of Appellant’s first
issue is factually sufficient to support Appellant’s conviction.  Appellant’s second issue is overruled.

 

Disposition

            The judgment of the trial court is affirmed.

 

 

                                                                                                    BILL BASS 
  

                                                                                                            Justice

 

 

Opinion
delivered April 28, 2006.

Panel
consisted of Worthen, C.J., DeVasto, J., and Bass, Retired Justice, Twelfth
Court of Appeals,

Tyler,
sitting by assignment.

 

 

 

 

(DO NOT PUBLISH)











    
[1] All references to section 22.02 are to
the current version.  Although Appellant
was charged under the prior version, the relevant subsections were unchanged by
the 2005 amendment.