**AFFIRM; and Opinion Filed July 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00913-CR

**EDWON KUMONT JULIAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1245796-V**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

A jury convicted Edwon Kumont Julian of animal cruelty, and the trial court assessed punishment, enhanced by a prior felony conviction, at ten years in prison. In his sole issue on appeal, Julian contends the evidence was insufficient to prove he caused unjustified pain or suffering to an animal. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.2(a), .4. We affirm the trial court's judgment.

In July 2012, Rosa Dismuke lived in an apartment with her three teenage children. They had one pet, a three-month-old kitten named Kisses. Dismuke's daughters found Kisses on the side of the road when she was about two weeks old. She could not see, eat, or care for herself, and the family nursed the kitten to health, feeding her with a bottle and cleaning her eyes. At the time of the incident, Kisses was healthy, and Dismuke said she had never seen her suffer seizures or convulsions, scream or cry in pain, or shake uncontrollably.

Appellant was Dismuke's boyfriend. On the day of the incident, he was at her home when they got into a verbal argument that escalated into a physical fight. The two were in the bedroom, and appellant threw his shaving tools at her, charged her, pinned her against the wall, and punched her. Dismuke fought back. Her daughters heard the commotion, came into the room, and tried to grab appellant. Appellant began swinging at Dismuke's daughters. Dismuke and her daughters were able to leave the bedroom.

Dismuke screamed at appellant to leave and went to the living room to call 911. Appellant was standing at the front door. Dismuke noticed he had something in his hand and was "twirling" or "waving" it around. She thought it was his shirt. As appellant was leaving and Dismuke closed the door, she realized appellant was not holding a shirt. She re-opened the door and saw Kisses "flying like in the air" from the second floor balcony. Kisses hit the drain pipe on a shed in the parking lot and then bounced off the sidewalk onto the curb. Dismuke ran down the stairs to Kisses. Her body "looked like she had been broke up." She said Kisses was "in pain" and was "shaking real bad like she [was] having seizures." Her tongue "was rolling" and she could not breathe. Kisses was whining, and as the whining got louder, Dismuke said it sounded like Kisses was screaming. Dismuke put Kisses in a towel and took her into the apartment. She called 911 and waited for the animal control officer. When he arrived, he told Dismuke that Kisses appeared to be in bad shape and would need immediate surgery. Kisses then let out an "unbearable scream," began shaking, and died.

City of Richardson animal control officer David Pitcock testified he arrived at the scene shortly after receiving the 911 call. The call indicated a cat had been thrown from a building. When Pitcock entered the apartment, the people inside were crying and upset. The kitten was lying on a bed and was shaking and having convulsions. He could tell "something was wrong." Pitcock said he tried to relieve the animal of any stress and went downstairs to get a carrier.

When he returned, the kitten had died. Pitcock took Kisses to the animal shelter, where he made a brief visual examination and took photographs. He said it appeared that one of Kisses' right legs was bent back, although he was not sure if it was broken. A necropsy was not performed. When asked if the cat's injuries appeared to be consistent with being thrown from a second-floor balcony, Pitcock responded, "I can't say yes or no that that's why it had the injuries." He did, however, believe it was possible.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, and it is within the jury's exclusive province to reconcile any conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The jury may choose to believe some testimony and disbelieve other testimony. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). When the record supports conflicting inferences, a reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution" and defer to that determination. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

A person commits the offense of cruelty to a nonlivestock animal if he intentionally, knowingly, or recklessly "tortures an animal[.]" TEX. PENAL CODE ANN. § 42.092(b)(1) (West 2011). Torture is defined as "any act that causes unjustifiable pain and suffering." *Id*. § 42.092(a)(8). Under the charge given in this case, the jury was authorized to convict appellant if it found beyond a reasonable doubt that he intentionally and knowingly tortured a kitten by swinging the kitten by its tail and throwing it onto a shed and onto the pavement.

Appellant argues the State failed to prove the kitten was injured by his act of throwing it off the balcony. Specifically, he suggests there must be medical evidence to make the

connection. Further, he contends Pitcock's testimony that he could not "say yes or no that [the fall from the balcony] was why it had the injuries" was an "equivocation" that cannot support a finding of guilt beyond a reasonable doubt.

The evidence shows appellant threw a healthy, three-month-old kitten from a second floor balcony. The kitten hit a drain pipe on a shed in the parking lot and bounced off onto the sidewalk. Dismuke testified in detail how the kitten screamed and whined, shook and convulsed, and struggled for breath before dying. Dismuke said the kitten looked like she had been "broke up." This testimony was sufficient for a rational jury to conclude that appellant's act of throwing the cat from the second-floor balcony caused the cat "unjustifiable pain or suffering." Contrary to appellant's argument otherwise, the jury did not need medical evidence to rationally reach this conclusion. Further, Pitcock's testimony was not necessary for the jury to make a finding on all elements. Pitcock was not present when appellant threw the kitten from the balcony and did not conduct a medical examination into the cause of death. Even so, he did testify that it was "possible" that the injuries were consistent with the cat being thrown from the balcony. Having reviewed all of the evidence, we conclude it is legally sufficient to support the jury's verdict. We overrule the sole issue.

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

130913F.U05

–4–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDWON KUMONT JULIAN, Appellant

No. 05-13-00913-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1245796-V.
Opinion delivered by Justice Lang-Miers;
Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 21st day of July, 2014.