NO.
12-04-00085-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

GARY
CLIFFORD ABBOTT,         §          APPEAL FROM THE 

APPELLANT

 

V.        §          COUNTY
COURT AT LAW NO. 2 OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Gary Clifford
Abbott appeals his conviction for insurance fraud.  In four issues, Appellant asserts that the
evidence is not legally or factually sufficient to support his conviction and
that the trial court imposed unreasonable conditions of community
supervision.  We affirm.  

 

Background

            Appellant was charged by indictment
with insurance fraud.[1] 
The indictment alleged that, on or about December 30, 2001, in Smith
County, Texas, Appellant, 

 

with intent to defraud or deceive an insurer, namely Encompass,
present[ed] to said insurer in support of a claim for payment under a property
and casualty insurance policy, the value of said claim being $1,500 or more but
less than $20,000, a statement that the defendant knew contained false or
misleading information concerning a matter affecting the right of the defendant
to a payment, and the matter was material to the claim in that it concerned whether
property was damaged or lost in the manner and under the circumstances
described in a statement related to a claim for insurance payment.[2]  

 

Appellant pleaded “not guilty.” 








            At his trial, a jury found Appellant
guilty of the charge as alleged in the indictment.  After ordering a presentence investigation
report (PSI), the trial court assessed punishment at two years of confinement
in a state jail facility, probated for five years with one hundred days as
shock probation.  The court also ordered
Appellant to pay a fine and restitution. 
Additionally, the court ordered weekly reports from Appellant concerning
matters of his business, buying and selling automobile parts.  This appeal followed.

            On original submission, this court
affirmed Appellant’s conviction and sentence. See Abbott v. State,
No. 12-04-00085-CR, 2005 WL 3589403 (Tex. App.–Tyler, Dec 30, 2005) (not
designated for publication).  Upon
further consideration, we noted that there was no factual basis in the
appellate record to justify the trial court’s order of restitution.  Thus, we withdrew our opinion and judgment,
abated the appeal, and remanded the cause to the trial court for a hearing to
establish a factual basis for restitution. 
See Tex. R. App. P.
50; see also Barton v. State, 21 S.W.3d 287, 290 (Tex. Crim.
App. 2000).  Pursuant to instructions,
the trial court conducted the hearing and addressed the factual basis for
restitution. 

Evidentiary
Sufficiency

            In his first and second issues on
appeal, Appellant argues that the evidence is legally and factually
insufficient to support his conviction. 
More  specifically, Appellant
contends there is no evidence that he “caused to be prepared or presented to
the insurer a statement he knew contained false or misleading information.”   

Standard of
Review

            “Legal sufficiency is the
constitutional minimum required by the Due Process Clause of the Fourteenth
Amendment to sustain a criminal conviction.” 
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio
1999, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S.Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979)).  The standard of  review is whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson,
443 U.S. at 319, 99 S.Ct. at 2789; Lacour v. State, 8 S.W.3d 670,
671 (Tex. Crim. App. 2000).  The evidence
is viewed in the light most favorable to the verdict.  Jackson, 443 U.S. at 319, 99
S.Ct. at 2789; Lacour, 8 S.W.3d at 671.  The conviction will be sustained “unless it
is found to be irrational or unsupported by more than a ‘mere modicum’ of the
evidence.”  Moreno v. State,
755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 
The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury’s domain.   Id. 
The jury is entitled to draw reasonable inferences from the
evidence.  Benavides v. State,
763 S.W.2d 587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d).  If a reviewing court finds the evidence
legally insufficient to support a conviction, the result is an acquittal.  Tibbs v. Florida, 457 U.S. 31,
41-42, 102 S.Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).  

            When reviewing the factual
sufficiency of the evidence, we review all of the evidence, but not in the
light most favorable to the prosecution. 
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  We must determine whether a
neutral review of the evidence, both for and against the finding, demonstrates
that a rational jury could find guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). 
Evidence is factually insufficient when evidence supporting the verdict,
considered by itself, is too weak to support the finding of guilt beyond a
reasonable doubt.  Id.  Evidence is also factually insufficient when
contrary evidence is so strong that the beyond a reasonable doubt burden of
proof could not have been met.  Id.
at 484-85. Our evaluation should not substantially intrude upon the jury’s role
as the sole judge of the weight and credibility of witness testimony.  Wesbrook v. State, 29 S.W.3d
103, 112 (Tex. Crim. App. 2000).

Legal
Sufficiency

            A person commits the offense of
insurance fraud if, with intent to defraud or deceive an insurer, he causes to
be prepared or presents to an insurer in support of a claim for payment under a
health or property and casualty policy a statement that he knows contains false
or misleading information concerning a matter that is material to the claim,
and the matter affects his right to a payment or the amount of payment to which
he is entitled.  Tex. Pen. Code Ann. § 35.02(a).

            Joe Byron Roach, a senior
investigator for Appellant’s insurance company, has eighteen years of
experience in law enforcement and fourteen years as an insurance
investigator.  He investigates unusual
claims.  At trial, Roach testified that
Appellant filed a theft claim for over $16,000 and that he denied Appellant’s
claim.  The court admitted into evidence
copies of the initial claim documents Appellant submitted to the insurance
company.  The paperwork included a sworn “Affidavit
of Vehicle Theft” that Appellant completed and submitted along with his
claim.  Additionally, the State produced
a copy of an internal estimate of the damages to Appellant’s vehicle that was
prepared by the insurance company as a direct result of Appellant’s filing his
insurance claim. Appellant admitted submitting the claim for the theft and
damage to the truck.  

            Chad Kersey, an officer with the
Tyler Police Department, testified that he responded to a call on December 30,
2001 when Appellant reported his white GMC truck had been stolen.  Kersey noted in his report that he found no
broken glass after examining the area of the parking lot of the Wingate Inn
where Appellant said he had left the truck overnight.  Jamie Blankenship, a patrol deputy at the
Rusk County Sheriff’s office, testified that on December 30 at 8:30 in the
morning, he saw a stripped white GMC pickup extended cab truck on County Road
186.  Blankenship said that the  truck had been stripped “clean,” explaining
that the job had been done neatly.  As an
example, he stated that most stripped vehicles have wires ripped and hoses
cut.  On this truck, the wires had been
unplugged and he noticed no physical damage to the vehicle other than the parts
having been stripped.  Blankenship further
explained that, in his experience, most stripped vehicles have wires “ripped
out” because the people committing the crime are in a hurry. 

            Jerry Wallace, owner of a wrecker
service, testified that he retrieved the truck from the county road where
Blankenship found it and took it to his place of business.  Wallace said that within a few hours,
Appellant picked up his truck, loading it onto a trailer.  Wallace noted that this was unusual for a
person who had his vehicle stolen. 
During his seventeen years in the business, Wallace had learned that
owners of stolen vehicles typically allow the insurance company to handle the
details, including paying his fees for towing the vehicle.  Wallace said that although the truck was
parked outside, he would have moved it to the covered garage upon request.

            Gary King, detective with the East
Texas Auto Theft Task Force of the Tyler Police Department, was assigned to the
case on January 17, 2002.  King said that
Appellant never called him to check on the status of the investigation.  At King’s request, Jeffrey Maeker, a sergeant
with the Department of Public Safety Motor Vehicle Theft Service in Tyler,
seized the truck from Appellant’s property on August 14, 2002 on a
warrant.  Maeker testified that after he
seized the truck, he identified several parts original to the truck that had
previously been stripped, but were back on the truck.  Specifically, Maeker identified a door and
air bag with numbers matching the vehicle’s identification number.  Maeker said that owners are typically upset
when their vehicles are sequestered. 
However, Maeker testified that Appellant did not complain or attempt to
prove to him that he had paid for the parts put back on the truck.

            From this testimony, including all
reasonable inferences, a rational trier of fact could have found that
Appellant, with intent to defraud an insurer, prepared a claim for payment that
he knew contained false or misleading information (that his truck had been
stolen and damaged).  See Tex. Pen. Code Ann. § 35.02(a).  Therefore, viewing the evidence in the light
most favorable to the jury’s verdict, we conclude that a rational trier of fact
could have found the elements of insurance fraud beyond a reasonable doubt.

Factual
Sufficiency

            In addition to the evidence
discussed above, Appellant and his wife gave their version of the events
relating to the insurance claim. 
Appellant’s wife, Terry Abbott, testified that she had driven her
Corvette to Tyler on December 29 to do some after Christmas shopping.  She received a phone call from Appellant
telling her that he was driving from their home and business in Eustace to
Tyler to buy some parts from the Harley dealership.  She met him at the dealership where they
discovered that the store was closed for inventory.  They left the truck there and drove the
Corvette around Tyler looking at classic cars. 
Later, they decided to spend the night in a Tyler hotel.  They picked up Appellant’s truck and drove
both vehicles to the hotel.  After
checking into the hotel, the couple drove the Corvette to dinner.  They then decided to drive back home, get
some clothes, and check on their pets.  

            On the drive home, they hit a bag of
leaves.  Upon arriving at their home,
Appellant put the Corvette up on a lift to check for damage.  Terry gathered their clothing and watched
television. Once Appellant finished working on the Corvette, the couple drove
back to Tyler, arriving at the hotel between 1:00 and 2:00 in the morning.  Around 10:00 the next morning, Appellant
walked out to the hotel parking lot.  He
saw that his truck was missing, and he called the police to report that his
vehicle had been stolen.  After giving
their report to an officer, the couple started home.  On the way to Eustace, the police department
called, saying they had found Appellant’s truck.

            Appellant’s wife testified that
after they recovered the stripped vehicle, she eventually ran an ad in the
newspaper.  The ad ran from June 26 to
July 7, 2002 and read, “REWARD: $4,000, no questions asked for parts taken from
2001 GMC pickup on Dec. 30 in Tyler, TX. . . .” 
She explained that since they owned an auto repair shop, they were in a
good position to repair the truck themselves. 
Further, obtaining the original parts would be more cost efficient than
buying replacement parts. 

            Appellant testified on his own
behalf.  He said that buying vehicles,
both to collect and trade, is his hobby. 
Of the ten to twenty vehicles that they owned at the time of this
incident, the GMC truck was the only vehicle that was not paid in full.  The truck was fully insured while the paid
vehicles were not. 

            Appellant testified about his
extensive background in automotive repair, including over thirty years of
experience.  Prior to starting his own
business, he last worked for a body shop owned by an insurance company.  Appellant stated that he was familiar with
how insurance claims are paid, having worked with the insurance aspect of the
auto repair business for approximately ten years.  

            Appellant explained that after
hitting the bag of leaves on the way to his house, he lost track of time as he
was repairing the damage to the Corvette’s spoiler.  Once he stopped working, he asked his wife if
she still wanted to return to the hotel in Tyler.  She stated that she did, and Appellant
estimated that they got back to the hotel around 2:30 in the morning.  They parked the vehicle they were driving on
the other side of the hotel. Upon awaking that morning, they used the swimming
pool and hot tub before packing to leave.

            Before the vehicle was stripped,
Appellant last saw it when he parked it in the hotel parking lot upon checking
into the hotel.  It was not until 10:00
the next morning as they were about to check out that Appellant noticed his
truck was missing.  After speaking to the
police officer and checking out of the hotel, Appellant received a phone call
on his cell phone as they were driving back to Eustace.  The sheriff’s department called to say that
his vehicle had been found, but it was stripped.  Appellant then called the wrecker service
where his truck had been towed and made arrangements to pick it up later that
day.  Appellant was anxious to get it to
his garage where, unlike at the wrecker yard, it would be covered and protected
from the weather.  He testified that upon
recovering the truck from the wrecker yard, a number of parts were missing,
including the front and rear bumpers, grill, fenders, hood, core support, fan
shroud, air conditioning control, radiator, left front door, rear doors,
tailgate, bed liner, trailer hitch, tires, and wheels.  The wires to the air conditioning control and
the left front door had been cut.  All
other wires had been unhooked.   

            Appellant claimed to have called
Detective King several times to check on the progress of the
investigation.  Appellant denied paying
someone to steal and strip his truck or doing it himself.  He said he learned only after this incident
that the hotel did not have security cameras. 
Appellant stated that he and his wife decided to run the ad for the
stolen parts after the insurance company denied his claim.  He testified that after they placed the ad,
they received a phone call from a woman claiming to know the location of the
parts.  Appellant met two women in their
forties at Walton, Texas.  He checked the
hood, which he knew to be from his truck because of a flaw in the paint job.
 He gave them $4,000 in cash although they did not have all of the missing
parts.  Appellant spent an additional
$2,500 on replacing the other missing parts. 
He said he did not report the women because he was interested only in
getting the parts back.  He explained that
no cash withdrawal showed on his bank account for these transactions because he
kept at least that much cash on hand for his business dealings.

            Appellant continued to make payments
on the truck even after the police impounded his vehicle.  Appellant testified that he thought the truck
had been stolen because “Chevrolet General Motor trucks are stolen so often,
and there’s so many theft rings.”               

            The jury may choose to believe some
testimony and disbelieve other testimony. See Margraves v. State,
34 S.W.3d 912, 919  (Tex. Crim. App.
2000).  Here, the jury determined the
credibility of the witnesses and resolved the evidentiary inconsistencies in
the State’s favor, which was its prerogative as fact finder.  Losada, 721 S.W.2d at 309.  In performing its function, the jury chose
not to accept the version of the facts presented by Appellant and his
wife.  Consequently, viewing the evidence
in a neutral light, we cannot say that the evidence supporting the verdict, considered
by itself, is too weak to support the finding of guilt beyond a reasonable
doubt.  Nor can we conclude that the
contrary evidence is so strong that the beyond a reasonable doubt burden of
proof could not have been met. 
Therefore, we conclude that the evidence was factually sufficient for
the jury to find Appellant guilty of insurance fraud as charged in the
indictment.  Accordingly, Appellant’s
first and second issues are overruled.

Court’s Imposition
of Community Supervision Requirements

            In his third and fourth issues,
Appellant asserts that the trial court imposed unreasonable conditions of
community supervision when it ordered him to pay $10,985.00 in restitution and
to submit an inventory of his automobile business to the East Texas Task Force
every fifteen days.    

Factual Basis for
Restitution

            In his
third issue, Appellant contends that there is no factual basis in the record to
justify the trial court’s order of restitution. 
The trial court has broad discretion in imposing conditions of community
supervision.  See Tex. Code Crim. Proc. Ann. art. 42.12 §
11(a) (Vernon Supp. 2005).  However,
where the defendant is ordered to pay restitution as part of his community
supervision, the restitution amount must have a factual basis in the record.  See Cartwright v. State, 605
S.W.2d 287, 289 (Tex. Crim. App. 1980). 
Although a trial court may take judicial notice of facts contained
within a PSI, the reviewing court must also be able to review the judicially
noted content of those reports to determine (1) whether the source information
actually establishes the judicially noticed fact and (2) whether the trial
court erred in taking judicial notice based upon the quality of the source
information.  See Brewer v. State,
No. 12-01-003690CR, 2004 WL 1717595, at *1 (Tex. App.–Tyler, July 30, 2004)
(not designated for publication).  

             Here, the court
ordered a PSI report prior to the sentencing hearing.   When discussing the PSI at sentencing,
Appellant’s counsel stated that the restitution costs claimed by Appellant’s
insurance company were fees for investigative services and other fees
associated with a civil suit between Appellant and the company.  At the State’s request, the trial court took
judicial notice of the PSI report. 
However, the State presented no evidence at the trial to substantiate
the company’s costs claimed for restitution appearing in the PSI report.  On remand, the trial court held an
evidentiary hearing on the restitution. 
A copy of the PSI report was admitted as an exhibit at the hearing, and
a reporter’s record, which included the exhibit, was filed for our review.

            At the
hearing, Lorie Grisham, a probation officer with Smith County Community Service
Department, testified that Encompass Insurance was the named victim in the case
against Appellant.  Grisham said that she
spoke with Carol Tatman, an adjuster at Encompass, who provided  the figures used to reach the restitution
amount of $10,985.92.  Further, Grisham
testified that Encompass sent records to the clerk of the trial court that were
included in the PSI report in support of the restitution amount.[3]  After reviewing the record from the hearing,
we conclude that the State provided a factual basis substantiating  the amount of restitution ordered.  Accordingly, we overrule Appellant’s third
issue.

Submission of Inventory Report

            The State asserts that Appellant
waived his fourth issue complaining of the court’s order that he submit an
inventory to the East Texas Task Force every fifteen days detailing every part
or complete automobile owned by Appellant. 
We agree.

            To preserve error for appellate
review, a party must make a timely, specific objection and obtain a
ruling.  Tex. R. App. P. 33.1(a); Saldano v. State, 70
S.W.3d 873, 889 (Tex. Crim. App. 2002). 
A defendant “must complain at trial to the [community supervision]
conditions he finds objectionable.”  Rickels
v. State, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003).  Failure to complain at trial constitutes a
waiver of any complaints a defendant may have had on appeal.  Id.  In this case, Appellant failed to object;
accordingly, any complaint is waived.  We
overrule Appellant’s fourth issue.

 

Disposition

            Having overruled Appellant’s issues
one, two, three, and four, we affirm the trial court’s
judgment.   

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

Opinion delivered June 30, 2006.

Panel consisted of Worthen, C.J. and
Griffith, J.

 

 

 

(DO
NOT PUBLISH)











[1] See Tex. Pen. Code Ann. § 35.02(a) (Vernon Supp. 2005).





[2] An offense under
section 35.02(a) is a state jail felony if the value of the claim is $1,500 or
more but less than $20,000.  Tex. Pen. Code Ann. § 35.02(c)(4)
(Vernon Supp. 2005).





[3] While the presentence report is hearsay, see Brown
v. State, 478 S.W.2d 550, 551 (Tex. Crim App. 1972), the Code of
Criminal Procedure provides that it may be considered by the judge in
sentencing.  See Tex. Code Crim. Proc. Ann. art. 42.12 §
9(a) (Vernon Supp. 2005).  “The trial
court should use the [PSI] and take all of the pertinent information into
consideration to determine if the person convicted should be granted probation.
. . . To suggest that the judge should not use the information in the [PSI]
because it contains ‘hearsay statements’ is to deny the obvious purpose of the
statute.”  Brown, 478
S.W.2d at 551.