# NO. 12-07-00340-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAMONT DEWBERRY,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

*MEMORANDUM OPINION*

A jury convicted Appellant, Lamont Dewberry, of aggravated assault, found the enhancement allegations to be true, and assessed his punishment at imprisonment for seventy-five years and a $10,000 fine. In two issues, Appellant contends that the evidence is both legally and factually insufficient to sustain his conviction. Appellant also maintains and the State agrees that the $10,000 fine was not authorized under Texas Penal Code section 12.42(d). We reform the judgment to remove the imposition of a fine. Otherwise, the judgment is affirmed.

## BACKGROUND

Broderick Osbourn and Brian Pullins went to an Exxon station in Tyler in Appellant's 1991 Chevrolet Caprice. Broderick Osbourn, the driver, had gone inside the store when Christopher Browning, the victim, spotted Brian Pullins sitting on the passenger side of the front seat. Browning believed that Pullins had broken into his store at Christmas. He approached the car on the driver's side and started yelling at Pullins. Anxious to get away, Pullins put the car in gear from the passenger seat and attempted to drive away while still seated on the passenger side of the front seat. In the process, Pullins hit a gas pump, some cars, a trash can, and a pay phone, seriously damaging

Appellant's 1991 Chevrolet Caprice. Osbourn caught up with the car, jumped in the driver's seat, and drove the car to 826 South Peach Street where they found Appellant. Appellant was unhappy about the damage to his car. Brian Pullins devised a story for Appellant's benefit that placed all the blame on Christopher Browning. He told Appellant that he had been attacked at the station by "Mr. Browning and them and they went to kicking the car and all that," and that in order to get away he had jumped in the passenger seat and backed up over something in order to escape.

Appellant got in the driver's seat of Pullins's Jeep. Pullins, two Osbourns, and Steve Whiteman also jumped in the Jeep, and they headed for the Notorious Grill where they thought they would find Appellant. Before they left, Whiteman gave Appellant "a chrome looking gun." When they reached the parking lot of the Notorious Grill, they found Browning sitting on the back end of a pickup with a group of friends.

Appellant and his confederates got out of the Jeep. Holding the revolver, Appellant went toward Browning saying "y'all messed up my car." Browning tried to get up but Appellant shot him in the leg. The gunman, whom Browning did not know, stood over Browning as he lay on the ground and told him, "You're going to pay for what you did to my car." Appellant and his group returned to South Peach Street. Browning's friends fled.

The results of the initial police investigation pointed to Appellant as the shooter. Browning picked Appellant's photo out of a six person photo lineup and said, "That's the guy that shot me."

The weapon used in the shooting was never found.

## LEGAL AND FACTUAL SUFFICIENCY

In the two issues presented, Appellant contends the evidence is legally and factually insufficient to support his conviction.

### Standard of Review

The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); *see also Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the

evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also **Watson v. State***, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

**Analysis**

A person commits aggravated assault if, in the course of committing an assault, he causes serious bodily injury or exhibits a deadly weapon during the assault. TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2007).

Christopher Browning identified Appellant at trial as the assailant, the man who stood over him pointing a pistol at him after he had been shot. He had picked Appellant out of a photo lineup shortly after the crime occurred.

Appellant points out that it was nearly dark in the parking lot of the Notorious Grill when the shooting occurred. Browning admitted at trial that he did not see who shot him or where the shots came from. In the evening immediately following the shooting, Browning tentatively identified Brian Pullins as the shooter. However, at trial he was positive Appellant was the person who stood over him after he was shot, pointing a pistol at him. Browning testified he was 100% sure that Brian Pullins did not shoot him.

Among those who accompanied Appellant to the parking lot of the Notorious Grill, only Brian Pullins identified Appellant as the man who shot Christopher Browning. He also told the jury that Steve "Sticky" Whiteman had given Appellant the pistol he used to shoot Browning.

Appellant argues that Pullins's version of what happened is incredible, because Pullins did not initially identify Appellant as the shooter. Only when he believed that he had been identified as the assailant did he point the finger at Appellant. Appellant argues that Pullins was a confirmed liar with a substantial criminal history and theft charges pending against him. Pullins admitted that his false account blaming Browning for the damage to Appellant's Caprice prompted the confrontation at the Notorious Grill. Pullins admitted two prior felony convictions for possession of a controlled substance, two convictions for evading arrest, and one for failure to identify. At trial he admitted that there were pending charges against him for felony theft and felony bond jumping.

In his testimony, Steve "Sticky" Whiteman did not mention giving Appellant a gun, and he

3

claimed he did not see who fired the shot that injured Browning. He denied telling Detective Cashell that Appellant, whom he knew as Brutis, was the person who shot Browning in the leg.

The State recalled Tyler Police Detective Cashell who testified that Whiteman had told him that Appellant was the shooter. Detective Cashell also told the jury that he had identified and talked to every occupant of Brian Pullins's Jeep that Appellant drove to confront Browning at the Notorious Grill. He testified that all the occupants except Appellant had told him that Appellant was the man who shot Christopher Browning.

It is true, as Appellant argues, that none of the witnesses who testified initially identified Appellant. The victim's initial confusion is understandable. Browning lay wounded in a dimly lit parking lot with his attention focused on the end of the gun barrel pointed at him. He had never seen Appellant before and he naturally suspected Pullins, the man with whom he had quarreled twenty minutes earlier. The initial reluctance of Appellant's companions to name him as the shooter needs no explanation.

The reconciliation of conflicts and contradictions in the evidence is within the province of the jury. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The jury may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions. *Id.* The jury resolved the conflicts against Appellant.

Reviewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient. Considering all the evidence in a neutral light, we find the jury was rationally justified in a finding of guilt beyond a reasonable doubt. Appellant's first and second issues are overruled.

## DISPOSITION

We *reform* the judgment to delete the imposition of a fine. In all other respects, the judgment of the trial court is *affirmed*.

                                                    BILL BASS
                                                      Justice

Opinion delivered July 16, 2008.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*
(DO NOT PUBLISH)

4