

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-242-CR

AL MOORE                                                          APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

------------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In two points, Appellant Al Moore challenges the legal and factual sufficiency of the evidence to support his conviction for sexual assault. We affirm.

### Background

The complainant in this case is Mary Taylor (a pseudonym). Mai Wilson, a friend of Mary's, testified that she was at a party with her brother when Mary

---

[1] *See* TEX. R. APP. P. 47.4.

and others, including Appellant and Abbie Taylor, arrived. Mai left with Mary, Appellant, and the others to go to a party at the home of Appellant's uncle, Prince Moore. Mai testified that she did not see Mary drink any alcohol at the first party or in the car on the way to Prince's house.

When they arrived at Prince's house, there was no party, and a man named Quillens Stevens took their car keys. Mai argued loudly outside the house with Stevens about the keys, and a neighbor called the police. The police told Stevens to return the keys, and Stevens said he would do so, but when the police left, he again refused to return the keys. Mai testified that after the police left, she saw Mary drinking something. Mary then went into the house to use the bathroom.

Mai said that when she attempted to enter the house to check on Mary, Stevens would not let her in. Mai said that when she finally gained entry into the house, she found Mary lying unconscious in a bathroom closet with her dress pulled up, her panties pulled to the side, her sexual organ partially visible, and semen on her. Mai testified that Appellant was in the bathroom, buttoning up his pants, and Stevens was standing over Mary with his pants half down and his hands on her breasts.

Mai began to yell, and Stevens eventually returned the car keys. Mary could not walk by herself and appeared to be under the influence of something.

2

Mai, Mary, Appellant, Abbie, and others left in the car. The others dropped Mai off at her house.

Mai called Mary's aunt, Juanita Moore, and told her what had happened. Juanita picked up Mai, and they drove together to Appellant's house. Mai testified that Abbie would not let her into Appellant's home, but she did let Juanita in. Juanita called the police and brought Mary out of the house. Mai said that Mary was not wearing her own clothes and appeared to have been bathed because her hair was wet.

Juanita testified that when she found Mary in Appellant's house, Mary was unconscious. Juanita said that Abbie told her they had bathed Mary "because they didn't want to find evidence."

Mary testified that on the day in question, she attended a wedding, a graduation party, and the party in Dallas where she met Mai. She said that she had nothing to drink at the wedding and that she drank one wine cooler while riding in the car to the party where she met Mai. Mary said that after the argument over car keys at Prince's house, she was thirsty and asked for a drink. Appellant's brother, Christopher, brought her a red-colored drink. Mary testified that the drink did not smell like alcohol and that she drank it all. After finishing the drink, she sat down on a bench outside Prince's house. She said that she did not remember anything after consuming the drink until she woke

3

up in a hospital the next day.  She testified that she did not consent to having sexual intercourse with Appellant, Stevens, or Christopher.  On cross-examination, the following colloquy occurred:

> Q.  You gave no one consent that you remember; is that correct?
>
> A.  I know I didn't give nobody permission to do anything to me.
>
> Q.  You don't remember anything after you sat down on that bench, correct?
>
> A.  I don't remember.
>
> Q.  Okay.  So you don't know if you didn't give someone permission or not?
>
> A.  Even if I didn't remember or whatever, I wouldn't give nobody permission to do any wrong things to me.  If I wanted to have had something to do with Al -- I've known him all my life -- it's not going to be that particular night because we had something doing, you know.
>
> Q.  So it is impossible for you to have given anybody consent?
>
> A.  No, ain't nothing impossible.

During cross-examination, Appellant's counsel also exposed inconsistencies between Mary's testimony and a prior sworn statement she made to police, including her statement to police that the red liquid was a wine cooler and the omission from her police statement that she remembered sitting down on a bench after drinking the liquid.

4

Abbie testified that she had observed Mary drinking alcohol at the party in Dallas earlier in the day. She said that on the ride from Prince's house to Appellant's house, Mary had vomited on herself, so Abbie took Mary's dress off and put some of Abbie's own clothes on her. She testified that she poured water on Mary's head in an effort to rouse her. Abbie testified that she had observed Mary and Appellant flirting earlier on the day in question and that she told police that she would not be surprised if Appellant and Mary had sex because Mary told Abbie that Appellant was cute.

Prince Moore testified that Mai summoned him to the bathroom closet in his house, where he saw Mary lying on the floor, apparently intoxicated, and Stevens "just like standing up." Prince could not remember whether Mary's dress was pulled up, and he denied having told the police that he had seen her dress pulled up, her panties pulled to the side, and semen all over her genitals. He said that Appellant later told him that he did not have sex with Mary in the bathroom closet.

Ernestine Moore, Prince's wife, testified that she awoke when she heard yelling and screaming in the house on the evening in question. She saw others assisting Mary out of the house. She said Mary was yelling, "Uncle Prince, don't call the police."

5

Donna Declow, a sexual assault nurse examiner, testified that Mary was intoxicated with alcohol when she was admitted to the hospital and was not sober enough to be interviewed until several hours later. The State and Appellant stipulated that a test of Mary's urine sample "revealed an alcohol level of 0.29 GM percent and was negative for the presence of GHB and amino-flunitrazepam, also known as Rohypnol." When Declow conducted a sexual assault exam, she found no injury or trauma to Mary's body. Declow testified that it is not unusual for a sexual assault victim to exhibit no injury and that Mary's level of intoxication "absolutely" may have contributed to her lack of injury.

Arlington police sergeant Christopher Moore testified that he interviewed Appellant in connection with the alleged assault. Sergeant Moore testified that Appellant said he had sex with Mary in a closet at his uncle's house. Appellant told Sergeant Moore that after he had sex with Mary, he left her in the bathroom closet with Stevens. Carolyn Van Winkle, a DNA specialist with the Tarrant County Medical Examiner's Office, testified that a DNA test on samples from Mary's vagina excluded 99.99 percent of unrelated individuals but not Appellant.

The jury convicted Appellant of sexual assault, and the trial court assessed punishment at two years' confinement. This appeal followed.

**Standards of Review**

When reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

7

**Discussion**

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by any means without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon Supp. 2008). A sexual assault is without consent if the other person has not consented and the actor knows the other person is unconscious or physically unable to resist or knows that the other person is unaware that the sexual assault is occurring. *Id.* § 22.011(b)(3), (5).

Appellant concedes that the record shows that he had sexual intercourse with Mary sometime on the day of the alleged sexual assault. But he challenges the legal and factual sufficiency of the evidence to show that Mary did not consent to the sexual contact. Appellant contends that while the stipulated evidence shows that Mary was intoxicated, the evidence is insufficient to show that she was unconscious when Appellant had sex with her and that Mary could not remember whether she had consented to have sex with him.

Mary testified that she did not consent to having sex with Appellant. Her statement on cross-examination that "ain't nothing impossible" and the evidence of her alcohol intoxication created a fact question for the jury to resolve. *See Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986) (noting that the reconciliation of conflicts and contradictions in the evidence is

8

within the province of the jury; the jury may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions).  Mai testified that she found Mary lying unconscious on the closet floor and Appellant standing nearby, buttoning his pants.  As Appellant concedes, the evidence shows that he had sex with Mary.

Considering the evidence in the light most favorable to the prosecution, we hold that a rational jury could have found all of the elements of sexual assault—including Mary's lack of consent and her unconsciousness, inability to resist, or unawareness that the assault was occurring—beyond a reasonable doubt; thus, the evidence is legally sufficient.  *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  Considering all of the evidence in a neutral light, we hold that evidence is also factually sufficient.  *See Watson*, 204 S.W.3d at 414–15, 417.  We therefore overrule Appellant's two points.

## Conclusion

Having overruled both of Appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  GARDNER, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

9

DELIVERED:  August 26, 2008