COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-07-242-CR

 

 

AL MOORE                                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In two points, Appellant Al
Moore challenges the legal and factual sufficiency of the evidence to support
his conviction for sexual assault.  We
affirm.

                                            Background








The complainant in this case
is Mary Taylor (a pseudonym).  Mai
Wilson, a friend of Mary=s, testified
that she was at a party with her brother when Mary and others, including
Appellant and Abbie Taylor, arrived.  Mai
left with Mary, Appellant, and the others to go to a party at the home of
Appellant=s uncle,
Prince Moore.  Mai testified that she did
not see Mary drink any alcohol at the first party or in the car on the way to
Prince=s house.  

When they arrived at Prince=s house, there was no party, and a man named Quillens Stevens took
their car keys.  Mai argued loudly
outside the house with Stevens about the keys, and a neighbor called the
police.  The police told Stevens to
return the keys, and Stevens said he would do so, but when the police left, he
again refused to return the keys.  Mai
testified that after the police left, she saw Mary drinking something.  Mary then went into the house to use the
bathroom. 

Mai said that when she
attempted to enter the house to check on Mary, Stevens would not let her
in.  Mai said that when she finally
gained entry into the house, she found Mary lying unconscious in a bathroom
closet with her dress pulled up, her panties pulled to the side, her sexual
organ partially visible, and semen on her. 
Mai testified that Appellant was in the bathroom, buttoning up his
pants, and Stevens was standing over Mary with his pants half down and his
hands on her breasts. 








Mai began to yell, and
Stevens eventually returned the car keys. 
Mary could not walk by herself and appeared to be under the influence of
something. Mai, Mary, Appellant, Abbie, and others left in the car.  The others dropped Mai off at her house. 

Mai called Mary=s aunt, Juanita Moore, and told her what had happened. Juanita picked
up Mai, and they drove together to Appellant=s house.  Mai testified that
Abbie would not let her into Appellant=s home, but she did let Juanita in. 
Juanita called the police and brought Mary out of the house.  Mai said that Mary was not wearing her own
clothes and appeared to have been bathed because her hair was wet. 

Juanita testified that when
she found Mary in Appellant=s house, Mary was unconscious. 
Juanita said that Abbie told her they had bathed Mary Abecause they didn=t want to find evidence.@  








Mary testified that on the
day in question, she attended a wedding, a graduation party, and the party in
Dallas where she met Mai.  She said that
she had nothing to drink at the wedding and that she drank one wine cooler
while riding in the car to the party where she met Mai.  Mary said that after the argument over car
keys at Prince=s house, she
was thirsty and asked for a drink. Appellant=s brother, Christopher, brought her a red-colored drink.  Mary testified that the drink did not smell
like alcohol and that she drank it all. 
After finishing the drink, she sat down on a bench outside Prince=s house.  She said that she did
not remember anything after consuming the drink until she woke up in a hospital
the next day.  She testified that she did
not consent to having sexual intercourse with Appellant, Stevens, or
Christopher.  On cross-examination, the
following colloquy occurred:

Q.  You gave no one consent that you remember; is
that correct?

 

A.  I know I didn=t
give nobody permission to do anything to me.

 

Q.  You don=t remember anything after you
sat down on that bench, correct?

 

A.  I don=t remember.

 

Q.  Okay. 
So you don=t
know if you didn=t
give someone permission or not?

 

A.  Even if I didn=t
remember or whatever, I wouldn=t give nobody permission to
do any wrong things to me.  If I wanted
to have had something to do with Al -- I=ve known him all my life --
it=s not
going to be that particular night because we had something doing, you know.

 

Q.  So it is impossible for you to have given
anybody consent?

 

A.  No, ain=t nothing impossible. 

 

During cross-examination, Appellant=s counsel also exposed inconsistencies between Mary=s testimony and a prior sworn statement she made to police, including
her statement to police that the red liquid was a wine cooler and the omission
from her police statement that she remembered sitting down on a bench after
drinking the liquid. 








Abbie testified that she had
observed Mary drinking alcohol at the party in Dallas earlier in the day.  She said that on the ride from Prince=s house to Appellant=s house, Mary had vomited on herself, so Abbie took Mary=s dress off and put some of Abbie=s own clothes on her.  She
testified that she poured water on Mary=s head in an effort to rouse her. 
Abbie testified that she had observed Mary and Appellant flirting
earlier on the day in question and that she told police that she would not be
surprised if Appellant and Mary had sex because Mary told Abbie that Appellant
was cute. 

Prince Moore testified that
Mai summoned him to the bathroom closet in his house, where he saw Mary lying
on the floor, apparently intoxicated, and Stevens Ajust like standing up.@  Prince could not remember
whether Mary=s dress was
pulled up, and he denied having told the police that he had seen her dress
pulled up, her panties pulled to the side, and semen all over her genitals. He
said that Appellant later told him that he did not have sex with Mary in the
bathroom closet.   

Ernestine Moore, Prince=s wife, testified that she awoke when she heard yelling and screaming
in the house on the evening in question. 
She saw others assisting Mary out of the house.  She said Mary was yelling, AUncle Prince, don=t call the police.@ 








Donna Declow, a sexual
assault nurse examiner, testified that Mary was intoxicated with alcohol when
she was admitted to the hospital and was not sober enough to be interviewed
until several hours later.  The State and
Appellant stipulated that a test of Mary=s urine sample Arevealed an
alcohol level of 0.29 GM percent and was negative for the presence of GHB and
amino-flunitrazepam, also known as Rohypnol.@  When Declow conducted a sexual
assault exam, she found no injury or trauma to Mary=s body.  Declow testified that
it is not unusual for a sexual assault victim to exhibit no injury and that
Mary=s level of intoxication Aabsolutely@ may have
contributed to her lack of injury. 

Arlington police sergeant
Christopher Moore testified that he interviewed Appellant in connection with
the alleged assault.  Sergeant Moore
testified that Appellant said he had sex with Mary in a closet at his uncle=s house.  Appellant told
Sergeant Moore that after he had sex with Mary, he left her in the bathroom
closet with Stevens.  Carolyn Van Winkle,
a DNA specialist with the Tarrant County Medical Examiner=s Office, testified that a DNA test on samples from Mary=s vagina excluded 99.99 percent of unrelated individuals but not
Appellant. 

The jury convicted Appellant
of sexual assault, and the trial court assessed punishment at two years= confinement.  This appeal
followed.








                                      Standards of Review

When reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








                                             Discussion

A person commits the offense
of sexual assault if the person intentionally or knowingly causes the
penetration of the sexual organ of another person by any means without that
person=s consent.  Tex. Penal Code Ann. ' 22.011(a)(1)(A)
(Vernon Supp. 2008).  A sexual assault is
without consent if the other person has not consented and the actor knows the
other person is unconscious or physically unable to resist or knows that the
other person is unaware that the sexual assault is occurring.  Id. ' 22.011(b)(3), (5).

Appellant concedes that the
record shows that he had sexual intercourse with Mary sometime on the day of
the alleged sexual assault.  But he
challenges the legal and factual sufficiency of the evidence to show that Mary
did not consent to the sexual contact. 
Appellant contends that while the stipulated evidence shows that Mary
was intoxicated, the evidence is insufficient to show that she was unconscious
when Appellant had sex with her and that Mary could not remember whether she
had consented to have sex with him. 








Mary testified that she did
not consent to having sex with Appellant. 
Her statement on cross-examination that Aain=t nothing
impossible@ and the
evidence of her alcohol intoxication created a fact question for the jury to
resolve.  See  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986) (noting that the reconciliation of
conflicts and contradictions in the evidence is within the province of the
jury; the jury may believe some witnesses and refuse to believe others, and it
may accept portions of the testimony of a witness and reject other
portions).  Mai testified that she found
Mary lying unconscious on the closet floor and Appellant standing nearby,
buttoning his pants.  As Appellant
concedes, the evidence shows that he had sex with Mary.

Considering the evidence in
the light most favorable to the prosecution, we hold that a rational jury could
have found all of the elements of sexual assaultCincluding Mary=s lack of
consent and her unconsciousness, inability to resist, or unawareness that the
assault was occurringCbeyond a
reasonable doubt; thus, the evidence is legally sufficient.  See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  Considering all of the evidence in a neutral
light, we hold that evidence is also factually sufficient.  See Watson, 204 S.W.3d at 414B15, 417.  We therefore overrule
Appellant=s two
points.

                                             Conclusion

Having overruled both of
Appellant=s points, we
affirm the trial court=s judgment.

PER CURIAM

 

PANEL:  GARDNER, DAUPHINOT, and HOLMAN, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 








DELIVERED:  August 26, 2008











[1]See Tex. R. App. P. 47.4.