NO. 07-10-00044-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 19, 2011

_____

MATTHEW RAY WATSON, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 50,524-E; HONORABLE DOUGLAS WOODBURN, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Matthew Ray Watson, appeals his conviction for reckless injury to a child, and sentence of twenty years incarceration and $10,000 fine. We will modify a portion of the judgment and affirm the judgment as modified.

Background

Appellant and his girlfriend, Amy Buie, were the parents of Averial. Averial was born on June 21, 2004. Because Amy had a job, appellant became the primary caregiver for Averial and her half-sister, Jordyn. Amy felt that appellant was a good caregiver to the children based on her observation that appellant never lost his temper

with the children, even though Averial was a fussy baby. Amy had taken Averial to routine pediatric check-ups which assessed Averial to be a healthy baby.

On August 5, 2004, Amy went to work around 3:30 p.m. Appellant took the children to a birthday party at his brother's house. Averial suffered no trauma and was not running a fever while at the party. However, it appeared that Averial may have had an upset stomach. Appellant left the party and picked Amy up from work around 10:45 p.m.

Sometime around midnight, Averial woke up and began crying. Amy got up to check on the baby. Amy checked the baby's diaper and prepared a bottle. Averial ate a little and then fell back to sleep. A little later, Averial again awoke crying. Amy comforted Averial until Averial again fell asleep. A few minutes later, Averial began crying again. This time, Amy asked appellant to go check on Averial.

Appellant got up while Amy remained in bed listening. Amy heard the microwave and assumed that appellant was preparing a bottle for Averial. Amy then heard appellant slide the closet door in Averial's room open. She then heard a "thump" that she thought sounded like the diaper box in the closet being dropped on the floor. However, Amy also noted that Averial's cry changed after the "thump." Soon thereafter, Averial stopped crying, which Amy thought was due to appellant feeding the baby.

A few minutes after Averial stopped crying, appellant yelled to Amy that there was something wrong with the baby. Amy leapt out of bed and met appellant holding Averial. Averial was having serious trouble breathing and was making a hiccupping breath. Appellant was hysterical and asking Amy what was wrong with the baby. Amy

2

ran to put on her clothes to take Averial to the hospital and, when she returned to Averial, the baby had stopped breathing and was beginning to turn blue. Amy attempted to perform CPR and give Averial mouth-to-mouth. Amy noticed a pink frothy substance coming out of Averial's nose and mouth and heard Averial gurgling. Amy asked appellant to call 911, but appellant said that he could not. Amy got Averial into the car. She asked appellant to drive them to the hospital so that she could continue administering CPR, but appellant refused. Consequently, Amy drove Averial to the hospital and, because appellant would not drive and did not go to the hospital, Averial was deprived of oxygen for over five minutes.

Upon arriving at the hospital, hospital staff took Averial away from Amy. While Averial was being treated, Amy spoke to appellant on the phone a few times. Appellant seemed focused on wanting to know whether the staff thought that he had done something to the baby.

Averial was unconscious and was placed on a ventilator. The examination of Averial indicated that something was wrong with her central nervous system with increased intracranial pressure. While there were no visible marks on Averial, x-rays established that Averial had suffered several broken ribs and that she had a small skull fracture. The broken ribs were noted to include both new and old breaks. Doctors eventually approached Amy and noted that Averial appeared to have been the victim of abuse. After eleven days in the hospital, Amy had to make the decision to take Averial, who was brain dead, off of the respirator.

3

As a result of subsequent investigation, appellant was indicted for the offense of capital murder. After seven days of trial, the jury was charged with determining whether appellant was guilty of capital murder, manslaughter, intentionally or knowingly causing a child serious bodily injury, or recklessly causing a child serious bodily injury. The jury found appellant guilty of the offense of injury to a child by recklessly causing serious bodily injury. After punishment evidence was presented, the jury assessed appellant's punishment at 20 years incarceration in the Institutional Division of the Texas Department of Criminal Justice, and a $10,000 fine. When the trial court entered the written judgment, it noted that an assessment of court costs was based on an attachment, which appears to be a subsequently prepared "Bill of Costs." This bill of costs assesses $56,996.04 for court-appointed attorney's fees, and $10,599.30 as a "Witness Fee." From this judgment, appellant timely filed notice of appeal.

By four issues, appellant challenges the judgment of conviction. In the order in which these issues will be addressed, appellant contends that the evidence was insufficient to support his conviction for injury to a child by recklessly causing serious bodily injury. Further, appellant contends that the trial court erred in assessing attorney's fees and a witness fee against appellant. The State responds that the evidence was sufficient to support the conviction, but concedes that the assessment of attorney's fees and the witness fee was erroneous.

Sufficiency of the Evidence

By his fourth issue, appellant contends that the evidence was legally insufficient to support a conviction for the lesser-included offense of injury to a child by recklessly causing serious bodily injury.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See Brooks v. State, 323 S.W.3d 893, 906-07 (Tex.Crim.App. 2010) (discussing Judge Cochran's dissent in Watson v. State, 204 S.W.3d 404, 448-50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex.Crim.App. 1994). Likewise, it is within the exclusive province of the jury to reconcile conflicts in the evidence. See TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); Losada v. State, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986).

For the evidence in this case to be sufficient, it must allow a reasonable jury to determine that appellant recklessly[1] caused serious bodily injury to a child[2] beyond a reasonable doubt. See TEX. PENAL CODE ANN. § 22.04(a)(1); Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. A person acts recklessly when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03 (West 2003).

Appellant's contention is premised on the fact that Amy was the only "witness" of the events of August 6, 2004. Further, appellant points to the fact that Amy could not see appellant's interaction with Averial and, therefore, all of the evidence implicating appellant was circumstantial.

However, proof of a defendant's culpable mental state is almost invariably proven by circumstantial evidence. Morales v. State, 828 S.W.2d 261, 263 (Tex.App.—Amarillo 1992), aff'd, 853 S.W.2d 583 (Tex.Crim.App. 1993). In the absence of direct evidence, the jury is tasked with reviewing all of the evidence to determine from the circumstantial evidence, such as the acts, words, and conduct of the defendant, whether the defendant possessed the requisite mental state. See id.

In the present case, the jury heard evidence that Averial was generally healthy prior to August 6, 2004. After Amy had twice checked on Averial, appellant got up to

---

[1] When the conduct causing serious bodily injury to a child is engaged in recklessly, the offense is a second degree felony. TEX. PENAL CODE ANN. § 22.04(e) (West Supp. 2010).

[2] For this offense, a child means a person 14 years of age or younger. TEX. PENAL CODE ANN. § 22.04(c)(1).

check on Averial due to her crying. When appellant got up to check on Averial, Amy heard a thump and, soon thereafter, Averial stopped crying. Following appellant's alert to Amy that there was something wrong with the baby, appellant refused to call 911 or to drive Amy and Averial to the hospital. The jury heard evidence that appellant seemed much more concerned about what the doctors thought caused Averial's condition than he was about Averial's condition. Also, the jury heard evidence that Averial died from blunt force trauma that caused intracranial hemorrhage, and that Averial had both old and new rib fractures. Clearly, we believe that it is a reasonable inference that Averial suffered the blunt force trauma that resulted in her death when Amy heard the "thump." At the time that Amy heard the "thump," appellant was the only person that had access to Averial. Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that appellant recklessly caused serious bodily injury to Averial beyond a reasonable doubt. See Jackson, 443 U.S. at 319.

We overrule appellant's fourth issue.

Assessment of Attorney's Fees

By his first two issues, appellant challenges the trial court's assessment of attorney's fees as court costs. The State concedes that the assessment of attorney's fees without a finding that appellant possessed the ability to pay was in error.

Article 26.05(g) of the Texas Code of Criminal Procedure provides, "[i]f the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, . . . the court shall order the defendant

7

to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2010). The key factors in determining the propriety of ordering reimbursement of fees are the defendant's financial resources and ability to pay. Mayer v. State, 309 S.W.3d 552, 556 (Tex.Crim.App. 2010). "Without evidence to demonstrate appellant's financial resources to offset the costs of the legal services, the trial court erred in ordering reimbursement of appointed attorney fees." Mayer v. State, 274 S.W.3d 898, 901 (Tex.App.—Amarillo 2008), aff'd, 309 S.W.3d at 558.

Here, the record includes no evidence that appellant had the ability to pay attorney's fees at the time that the trial court assessed them. As such, we conclude that the evidence supporting this portion of the judgment is legally insufficient and will modify the judgment to remove the assessment of $56,996.04 for attorney's fees. See id. at 902.

We sustain appellant's first and second issues.

Assessment of Witness Fees

By his third issue, appellant challenges the assessment of a "witness fee" as court costs. The State again concedes that the assessment of a witness fee was error, but relies on current case law not supporting the inclusion of witness fees as costs of court rather than on the lack of a finding of appellant's ability to pay the fee.

Unlike legislatively mandated fees that are statutorily required to be assessed against a convicted defendant, see TEX. GOV'T CODE ANN. §§ 102.021, 102.041 (West

8

Supp. 2010); <u>Armstrong v. State</u>, 320 S.W.3d 479, 481 (Tex.App.—Amarillo 2010, pet. granted), this Court has held that there is no statutory authorization for the assessment of non-resident witness fees as costs of court in criminal cases. <u>See</u> <u>Sikalasinh v. State</u>, 321 S.W.3d 792, 798 (Tex.App.—Amarillo 2010, no pet.) (holding that article 102.002 of the Texas Code of Criminal Procedure does not authorize the assessment of witness fees paid pursuant to article 35.27 as costs of court). As such, we conclude that the trial court erred in assessing a "witness fee" as a cost of court, and will modify the judgment to remove the assessment of $10,599.30 as a witness fee.

We sustain appellant's third issue.

## Conclusion

For the foregoing reasons, we modify the judgment of the trial court to delete the assessments of $56,996.04 for attorney's fees and $10,599.30 as a witness fee. As modified, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.

9