

# Fourth Court of Appeals

## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-12-00492-CR

Jeremy B.J. **MILLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 432nd District Court, Tarrant County, Texas
Trial Court No. 1276453R
The Honorable Ruben Gonzalez, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 17, 2013

AFFIRMED

Jeremy B.J. Miller appeals his convictions for murder and unlawful possession of a firearm by a felon. In one issue, Miller contends the evidence is insufficient to support the jury's finding of guilt. We affirm.

The evidence at trial showed that a shooting occurred on November 8, 2010, in the vicinity of 1300 East Powell and 2356 Beverly Avenue in Fort Worth, Texas. Eric Davis (also known as "D-Loc") was killed when he was shot in the chest. Officer Chad Kingston was the first law enforcement officer to arrive at the scene in response to a disturbance call. He testified that the

houses at 1300 East Powell and 2356 Beverly Avenue were located across the street from each other. According to Officer Kingston, he found shell casings on the patio of 1300 East Powell and in the street in front of 2356 Beverly.

Patrick Cato, a witness to the shooting, testified that he lived at 1300 East Powell with several family members. D-Loc also lived in the house. According to Patrick, everyone living in the house was there on the day of the shooting, except D-Loc, who was at work, but eventually returned home. While D-Loc was at work, there were a number of people gathered outside the house. Patrick testified that at one point, he was outside and had a conversation with a man named Tezelle, who lived across the street. Then, when D-Loc came home from work, Tezelle and D-Loc started fighting. After the fight, D-Loc started to walk back to the house when Patrick heard Tezelle tell somebody to "get the guns." D-Loc then went in the house. As Patrick was walking away, he saw Tezelle's brother, Jeremy Miller (the defendant), holding a Tec-9 semi-automatic gun. As D-Loc was walking into the house, Patrick heard gunshots. Patrick turned around and saw Tezelle holding a revolver and Miller holding the Tec-9 gun. They were shooting the guns. When he heard the shooting, Patrick grabbed his baby and ran to the side of his house. He testified he could still see from around the corner of the house. At some point, D-Loc came back out of the house. Patrick testified he heard D-Loc shooting, but the first shots he heard came from across the street. Patrick heard shots firing back and forth. When he peeked around the corner of the house, he saw Miller shooting the Tec-9 and Tezelle shooting the revolver. Patrick did not see anyone else possessing or firing a weapon. He saw only three people shooting: Tezelle, Miller, and D-Loc. After the firing stopped, Patrick went into the house and saw D-Loc bleeding from his chest. Patrick then went back to the side of the house where he saw Tezelle and others fleeing the scene. Patrick's niece, Connie, then took D-Loc to the hospital.

Patrick's wife, Nekeia Cato, also testified at trial that she was at the house at 1300 East Powell when D-Loc was shot. On the day of the shooting, Tezelle was present, along with others, one of whom she knew to be his brother. According to Nekeia, Patrick had an argument with Tezelle. D-Loc then came home, and there was a big commotion in the street. Nekeia testified Tezelle and D-Loc started fighting. D-Loc then had an asthma attack and walked back toward the house. According to Nekeia, she then heard Tezelle say "get the gun." She grabbed her child and her nephew, and ran to the side of the house, along with Patrick. She did not look around the side of the house to see what was happening. Nekeia testified she does not know who was shooting. When the shooting stopped, she went in the house and saw that D-Loc had a gunshot wound to his chest.

Eric Johnson, D-Loc's father-in-law, also testified at trial. He lived at 1300 East Powell and was there on the day of the shooting. Johnson testified he is familiar with Tezelle and Tezelle's brother, Jeremy Miller, who live across the street at 2356 Beverly. According to Johnson, he was outside when Tezelle argued with Patrick and Nekeia, but then went back in the house. He later saw D-Loc come in the house, get a gun, and go back outside. Johnson then heard shooting.

Another witness, Patricia Manning, also lived at 1300 East Powell. She is Johnson's wife and Patrick's sister. She was at the house on the day of the shooting. According to Manning, Tezelle, Patrick, and Nekeia had an altercation in the street. Later, after D-Loc came home, D-Loc and Tezelle started fighting. D-Loc then went back to the house. According to Manning, she was walking toward the house when her niece, Comilia, said, "they got a gun." Manning testified that by the time she reached the door, Tezelle and his brother were shooting. She then saw D-Loc go to his room, get a gun, and go back outside. Manning turned around and saw that Tezelle and his brother had guns. She did not, however, see them fire the guns. Manning testified that she did not see anyone else with a weapon.

Also testifying at trial was J. J. Jeanes, who works with the crime scene unit for the Fort Worth Police Department. Jeanes took photographs and measurements at the crime scene. He found shell casings in the street and yard adjacent to the patio of 1300 East Powell. He did not, however, find any casings in the yard at 2356 Beverly. He collected twenty-seven shell casings, and all were from a .9 millimeter semi-automatic weapon.

Additionally, Timothy Lee, a crime scene investigator for the Fort Worth Police Department, testified. He found bullets that had been shot into the house on Beverly. Also in the Beverly house he found live ammunition rounds. Some were .38 caliber and some were .9 millimeter.

Jennifer Nollkamper, a Senior Forensic Scientist with the Fort Worth Police Department, testified that she identified shell casings from the scene, some of which were .9 millimeter. The projectile recovered from the autopsy of the victim was consistent with a .38 caliber class, which includes a .9 millimeter.

Dr. Marc Krouse, Chief Deputy Medical Examiner, testified that the cause of death of the victim was a gunshot wound to the chest. The manner of death was homicide.

The defense called Connie Evonne Johnson as a witness. Johnson lives at 1300 East Powell and was present on the day of the shooting. She is the mother of D-Loc's children. Johnson testified she was inside that day, but some of her friends and family were outside. When D-Loc got home from work, she and D-Loc walked outside. According to Johnson, there were a lot of people in the street, and Patrick and Tezelle were having a conversation. She then saw D-Loc and Tezelle start fighting in the middle of the street. When the fight was over, everybody started walking away. However, before she got back in the house, she heard shooting. Johnson testified D-Loc went into the house for a few seconds and then went back outside with a gun. She heard a lot of shooting.

When D-Loc came back in, he had been shot. He told her Tezelle had shot him. She then took D-Loc to the hospital.

## DISCUSSION

In one issue on appeal, Miller argues that the "evidence is insufficient to support the verdict of guilty on any count in this cause." According to Miller, the "testimony was inconsistent, only one witness claims to have actually seen [Miller] shooting a gun, and there is no physical evidence linking [Miller] to the death of Ernest 'D-Loc' Davis." The State counters that the evidence, when viewed in the light most favorable to the verdict, is sufficient to support the guilty verdict.

In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

As the State points out, the court's jury charge tracked the language of section 19.02(b) of the Penal Code, instructing the jury that a person commits murder if he

1. commits or attempts to commit a felony, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual;

2. intentionally or knowingly causes the death of an individual; or

3. intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b) (West 2011). Further, jury unanimity is not necessary when alternate means or methods of commission of the offense are alleged. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007). Thus, the jury was free to consider any of the three alternative means of committing murder as was given in the jury charge.

Also, the jury charge contained an instruction on the law of parties, so the jury was likewise free to find Miller was guilty as a party to the offense. Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

Here, there was sufficient evidence to support the jury's finding of guilt under any of the three means or methods of commission with which the jury was charged. The evidence showed Miller was a felon; thus, his possession of the gun was a felony. And, in furtherance of the commission of the felony, his shooting of the gun at another individual was an act clearly dangerous to human life that caused the death of the individual. Further, the jury could have concluded that by shooting the gun at an individual who was killed, he intended to cause serious bodily injury or death. And, because both Miller and his brother were shooting at the individual, the jury could have found Miller was guilty as a party.

Miller advances three specific reasons why the evidence is insufficient to support the jury's verdict. First, he emphasizes that the testimony between the witnesses was inconsistent. And, secondly, he highlights that inconsistency, noting only one of the witnesses, Patrick Cato, testified he saw Miller shooting at D-Loc while another witness, Connie Johnson, testified that D-Loc told

her Tezelle shot him. However, the jury, as sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). The jury may reasonably infer facts from the evidence, credit the witnesses it chooses to, disbelieve any or all of the evidence, and weigh the evidence as it sees fit. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the jury's discretion, and such conflicts alone will not result in reversal if there is credible evidence to support a conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The duty of the appellate court is to determine if the findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *Clemons v. State*, 893 S.W.2d 212, 214-15 (Tex. App.—El Paso 1995, no pet.). Thus, although there were some inconsistencies among the witnesses' testimonies, the jury resolved the conflicts in favor of a finding of guilt. There is sufficient evidence in the record to support the jury's verdict.

Lastly, Miller claims there is no physical evidence linking Miller to the death of the victim. Circumstantial evidence, however, is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). There is sufficient circumstantial evidence in the record to support the jury's guilty verdict. The evidence established that both Miller and Tezelle were holding guns; both were shooting them at D-Loc; and as a result D-Loc was shot in the chest and died from the gunshot wound.

Because the evidence is sufficient to support Miller's conviction, we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish